In re the BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY.

No. 2–02–400–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 7, 2003.

Thompson & Knight, P.C., Bryan P. Neal, Stephen F. Fink, Dallas, for Relator.

Law Offices of John David Hart, John David Hart, Fort Worth, Simpson & Boyd, Michael A. Simpson, Bridgeport, Brown, Herman, Dean, et al., John W. Procter, Fort Worth, for Real Parties in Interest.

Panel A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

On November 26, 2002, relator Burlington Northern and Santa Fe Railway Company (BNSF) filed a petition for writ of mandamus from the trial court's order denying its motion for protective order and motion to quash the deposition of its president and CEO, Matthew K. Rose. We conditionally grant the writ.

### II. FACTUAL BACKGROUND

This case arises out of a railroad crossing accident between a Union Pacific train and a van driven by James Anthony Phillips. BNSF owns the tracks at the crossing where the accident occurred. As a result of the accident, real parties in interest Cindy McGinnis, Individually and as Next Friend for James Anthony Phillips, Stephanie A. Phillips and James M. Phillips, sued both BNSF and Union Pacific.

On August 28, 2002, real parties noticed Rose's deposition for October 21, 2002.[1] BNSF filed a motion for protective order and motion to quash Rose's deposition, along with Rose's affidavit, which stated, among other things, that he had no specific or superior knowledge with regard to the crossing at issue in the suit or with regard to any other aspect of the case. Real parties in interest filed a response to the motion, and BNSF filed a reply.

On October 18, 2002, the trial court issued a letter ruling, directing real parties to prepare an order denying BNSF's motion.[2] On November 19, 2002, BNSF obtained a written order denying its motion

for protective order and motion to quash Rose's deposition. Rose's deposition did not go forward in October as originally scheduled, but was renoticed for December 9. The amended notice was issued before the trial court's November 18 order. BNSF filed its petition for writ of mandamus on November 26, 2002, challenging only the denial of the motion to quash Rose's deposition. It later filed a motion for temporary relief on December 23, 2002, requesting that this court stay Rose's deposition, now scheduled for January 6, 2003, pending final resolution of this proceeding. The motion was granted.

### III. THE APEX DEPOSITION

Real parties do not dispute that Rose's deposition would be an apex-level deposition. *See Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 128 (Tex.1995) (holding apex deposition guidelines apply "[w]hen a party seeks to depose a corporate president or other high level corporate official"). The issue is whether real parties satisfied the apex deposition guidelines established by the Texas Supreme Court. Specifically, BNSF argues real parties failed to show that: (1) Rose has unique or superior knowledge of discoverable information; or (2) Rose has information that cannot be obtained through less intrusive means. Thus, according to BNSF, the trial court abused its discretion in denying its motion for protective order and motion to quash Rose's deposition.

■ In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a

---

1. Real parties also noticed the depositions of several other BNSF representatives, but these notices are not at issue in this proceeding.

2. BNSF subsequently filed a petition for writ of mandamus with this court, challenging the

trial court's order denying the motion for protective order as to all the notices of deposition. This court denied the petition and subsequent motion for rehearing.

duty imposed by law when there is no other adequate remedy at law. *In re Daisy Mfg. Co.,* 17 S.W.3d 654, 658 (Tex.2000) (orig. proceeding); *In re Alcatel USA, Inc.,* 11 S.W.3d 173, 175 (Tex.2000) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

■ Under *Crown Central,* a party seeking to prevent the deposition of an apex-level witness must move for protection and must file the corporate official's affidavit denying any knowledge of relevant facts. 904 S.W.2d at 128; *see also Alcatel,* 11 S.W.3d at 175–76. The trial court must then evaluate the motion and decide if the party seeking the deposition has "arguably shown that the official has any unique or superior personal knowledge of discoverable information." *Crown Cent.,* 904 S.W.2d at 128. "If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should" not allow the deposition to go forward without a showing, after a good faith effort to obtain the discovery through less intrusive means, "(1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory,

insufficient or inadequate." *Id.; see also Alcatel,* 11 S.W.3d at 175–76.

■ BNSF properly initiated the apex guideline proceedings set forth in *Crown Central* by moving for protection and filing Rose's affidavit denying any knowledge of relevant facts.[3] *See Crown Cent.,* 904 S.W.2d at 128; *see also Alcatel,* 11 S.W.3d at 175; *AMR Corp. v. Enlow,* 926 S.W.2d 640, 643 (Tex.App.—Fort Worth 1996, orig. proceeding). Thus, the burden shifted to real parties to show that Rose had unique or superior personal knowledge of discoverable information. *See Alcatel,* 11 S.W.3d at 175–76; *AMR Corp.,* 926 S.W.2d at 643.

■ In response to BNSF's motion for protective order and motion to quash, real parties stated that the deposition of Tim Huya, a BNSF employee, showed Rose was directly involved in the decision relating to the timing of crossing upgrades. In support of their contention, real parties attached excerpts of Huya's deposition testimony to its response. The deposition showed that an April 2000 meeting or work session between BNSF and the Texas Department of Transportation took place for purposes of discussing a process for reducing the time frame for installing crossings in Texas, which would result in a reduction from a twenty-six month to a thirteen-month installation process after April 2000. The only reference to Rose in this meeting was Huya's statement that "our president of our corporation at the time advised us that we should look at

---

3. In response to the petition for writ of mandamus, real parties argue that the petition should be denied because Rose did not specifically state in his affidavit that he did not have "any knowledge of relevant facts." First, there is no requirement that a party must recite the specific language of *Crown Central* in an affidavit in order to show that the affiant has no knowledge of relevant facts. Further, Rose's affidavit stated in numerous

places that he had no knowledge of the facts of the lawsuit. Specifically, Rose stated in his affidavit that he has "no unique or superior knowledge or information regarding any aspect of this case" and that he has "no personal knowledge of the condition of this crossing at the time of the accident made the basis of this suit." We believe this language complies with *Crown Central.*

even more refining, refining the timeline to even shorter," effective as of January 1, 2001. Huya then testified that they "came out of that working session with a second option of a seven-month install." Huya also testified as to his understanding of why Rose wanted to reduce the install time:

> Part of our vision statement on BNSF is to be a leader in the transportation industry and a leader in safety. One of those aspects is getting crossings in as quickly as possible, completing tasks as quickly as possible to lead the industry, to show others, to say, "BNSF can do it quicker, better, faster than everybody else."

Huya testified that the vision statement was also in a printed document.

■ This testimony shows only that Rose wanted BNSF to look at shorter time frames for installing crossings. There is no evidence that Rose was either present at the meeting or that he had any specialized knowledge about the details discussed at that meeting. Huya's understanding that the company's vision statement provided the basis for Rose's suggestion of looking at a shorter time frame does not show that Rose had any specialized or superior knowledge with regard to crossings. The evidence relied upon by real parties is too general to show Rose's knowledge is unique or superior with respect to either crossings in general or the crossing in this case. *See Alcatel,* 11 S.W.3d at 177. Testimony that a corporate executive possesses knowledge of company policies does not, by itself, satisfy the first *Crown Central* test because it does not show that the executive has unique or superior knowledge of discoverable information. *Id.*

Real parties also did not show in their response to the petition for writ of mandamus that Rose has unique or superior personal knowledge of discoverable information. Instead, real parties tried to shift the burden, stating the petition should be denied because BNSF failed to deny that Rose had unique or superior knowledge of the "upgrade process for installing active warning devices." This burden, however, falls on real parties, and they have failed to meet it. *See id.* at 175–76.

■ The evidence presented by real parties to the trial court and to this court does not show anything beyond mere relevance. *Id.* at 179. To be unique or superior, "there must be some showing beyond mere relevance, such as evidence that a high-level executive is the only person with personal knowledge of the information sought *or* that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources." *Id.* (emphasis added). Real parties presented no evidence here or in the trial court that comes close to showing Rose meets either criteria.

Having failed to show that Rose had unique or superior knowledge, real parties were required to make a good faith effort to obtain the discovery through less intrusive means. *See id.* at 175–76; *AMR Corp.,* 926 S.W.2d at 644. Real parties did not demonstrate or allege that they made a good faith effort to obtain the discovery through less intrusive means. *See AMR Corp.,* 926 S.W.2d at 644. Thus, based on BNSF's motion for protective order, Rose's affidavit, and real parties' failure to follow the *Crown Central* guidelines for obtaining Rose's deposition, we hold the trial court abused its discretion in denying BNSF's motion for protection order and motion to quash Rose's deposition.

## IV. Conclusion

Because the trial court abused its discretion in denying BNSF's motion for protec-

tive order and motion to quash Rose's deposition, we conditionally grant BNSF's petition for writ of mandamus. We are confident the trial court will vacate its order in accordance with this opinion. We instruct our clerk to issue the writ only if the trial court fails to comply with this opinion.