COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)


RHONDA GAYLE WILLIAMS, )


INDIVIDUALLY AND IN BEHALF OF
)


ROGER CECIL WILLIAMS AS NEXT
)
 

FRIEND,
)
 No. 08-02-00195-CV

)


 Appellants,
)
 Appeal from

)
 

v.
)
 161st District Court

)


ORION PACIFIC, INC., )
 of Ector County, Texas

MADISON MINERALS, INC., )


ORREX PLASTICS COMPANY, L.L.C., )
 (TC# B-106,955)

et al.,
)


)


 Appellees.
)



MEMORANDUM OPINION



 This lawsuit arises from a tragic on-the-job injury suffered by Roger Williams. Rhonda
Williams, individually and as next friend, sued Orion Pacific, Inc., Madison Minerals, Inc., and
Orrex Plastics Company, L.L.C. for damages. Summary judgment was granted in favor of all three
defendants. At issue is whether the trial court properly denied apex depositions of the president and
secretary/treasurer of Madison (1) and whether summary judgment was appropriate before discovery
was completed. We affirm.


FACTUAL SUMMARY


 Roger Williams was an employee at the Orion Pacific, Inc. (Orion) facility in Odessa. On
March 8, 1999, he was working around a tumbler/cage/container which is referred to in the record
as a trommel. Before entering the trommel, Williams failed to activate the power safety lock switch. 
Unaware that Williams was inside, another employee activated the trommel. Williams was struck
on the head and suffered permanent brain damage. He is a quadriplegic and can no longer speak
effectively. A workers' compensation claim was duly filed and Williams has been receiving benefits
since the accident. The Williamses subsequently sued Orion, Madison, and Orrex alleging various
causes of action, including negligence, intentional infliction of emotional distress, gross negligence,
piercing the corporate veil, violation of OSHA regulations, improper design, improper installation,
and improper operation.

 Summary judgment was granted in favor of Orion on April 19, 2000. Although the record
does not contain the motion, reference is made elsewhere that summary judgment was appropriate
because Williams was receiving workers' compensation benefits through his employment at Orion
and this was his exclusive remedy. Tex.Lab.Code Ann. § 408.001 (Vernon 1996). A severance
was granted but that judgment has not been appealed and is not before the court here. On June 22,
2000, the Williamses deposed Nicholas Fowler, the president and chief operating officer of Orion. 
With both a bachelor of science and master's degree in civil engineering, he was the primary
designer of the trommel in which Williams was injured. Fowler explained the corporate structure
of the defendants and the nature of the business operations in plastics recycling. Madison is the
parent holding company for Orion and owns 100 percent of the company.

 On January 10, 2001, the Williamses noticed the depositions of the president and secretary-treasurer of Madison. Madison responded with a motion for protective order supported by the
affidavits of Michael Fowler, the president of Madison, and Jay Chaffee, the secretary-treasurer,
alleging that they were officers at the apex of the corporate hierarchy and had no knowledge of the
relevant facts. The protective order was granted.

 On August 9, 2001, Madison filed a motion for summary judgment in which it alleged that 
it was the parent holding company for Orion and that the workers' compensation benefits paid to
Williams were paid through a policy issued to and purchased by Madison. Pursuant to Section
408.001 of the Labor Code, Madison argued that Williams was prohibited from bring suit against
his employer for injuries occurring on the job when he is covered by a workers' compensation
insurance policy and the exception allowing recovery for gross negligence in an accident which
causes the death of the employee does not apply. Orrex filed its motion for summary judgment on
December 21, 2001. On April 23, 2002, the trial court granted both motions. The Williamses raise
no complaint in this appeal with regard to the summary judgment granted in favor of Orrex. Nor do
they challenge the propriety of summary judgment granted to Madison on the basis that workers'
compensation is their exclusive remedy. Consequently, we address only the discovery issues relating
to Madison.

STANDARD OF REVIEW


 We review a trial court's decision regarding a discovery-related protective order under an
abuse of discretion standard. See Bloyed v. General Motors Corp., 881 S.W.2d 422, 437
(Tex.App.--Texarkana 1994), aff'd, 916 S.W.2d 949 (Tex. 1996). A district court abuses its
discretion when it acts unreasonably or arbitrarily, or without reference to any guiding rules of
principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991)

APEX DEPOSITION


 In Issue One, the Williamses argue that the trial court abused its discretion by denying their
request to depose Michael Fowler and Jay Chaffee and by granting summary judgment before
discovery was complete. In considering a motion for protective order filed to prevent an apex
deposition, a trial court must follow the framework as established in Crown Central. In re Daisy
Mfg. Co., Inc., 17 S.W.3d 654, 656 (Tex. 2000); Crown Central, 904 S.W.2d at 128. If a party seeks
to depose a president or other high level corporate official and that official, or the corporation itself,
files a motion for protective order accompanied by the official's affidavit denying any knowledge
of relevant facts, the trial court should first determine whether the party seeking the deposition has
shown that the official has any unique or superior personal knowledge of discoverable information. 
In re El Paso Healthcare System, 969 S.W.2d 68, 73 (Tex.App.--El Paso 1998, no pet.). Testimony
that a corporate executive possesses knowledge of company policies does not, in and of itself, satisfy
this requirement because it does not demonstrate that the executive has unique or superior
knowledge of discoverable information. In re Alcatel USA, Inc., 11 S.W.3d 173, 177 (Tex.
2000)(orig. proceeding); In re Burlington Northern and Santa Fe Ry. Co., 99 S.W.3d 323, 327
(Tex.App.--Fort Worth 2003, no pet.). If the proponent cannot arguably show that the high-level
official has unique or superior knowledge, the trial court must enter a protective order and require
the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. 
In re Daisy Mfg. Co., Inc., 17 S.W.3d at 656-57; Crown Central, 904 S.W.2d at 128. 

 The discovering party may thereafter depose the apex official if, after making a good faith
effort to obtain the discovery through less intrusive means, the party demonstrates that (1) there is
a reasonable indication that the official's deposition is calculated to lead to the discovery of
admissible evidence, and (2) the less-intrusive methods are unsatisfactory, insufficient, or
inadequate. In re Daisy Mfg. Co., Inc., 17 S.W.3d at 656-57; Crown Central, 904 S.W.2d at 128. 
Only after making a good faith effort to obtain the discovery through less intrusive means may the
party seeking the deposition have the protective order vacated and modified. Crown Central, 904
S.W.2d at 128; Frozen Food Express Industries, Inc. v. Goodwin, 921 S.W.2d 547, 549 (Tex.App.--Beaumont 1996, no writ). 

 Madison contends that the Williamses did not and cannot show that Fowler and Chaffee have
any unique or superior personal knowledge of discoverable information. But for the fact that Jay
Chaffee was the secretary-treasurer of Madison, his affidavit is identical to that of Michael Fowler's,
which provides: 

 My name is Michael McSwain Fowler and I am the President of Madison Minerals,
Inc., Defendant in the above-entitled action. . . . I am personally acquainted with the
facts herein stated, which are true and correct.


 I reside and office in Houston, Texas. I have no knowledge of facts relevant to this
lawsuit. Specifically, I never met Roger Cecil Williams, the Plaintiff in this action,
and have no involvement with the day to day operations or procedures at the facility
where Roger Cecil Williams was employed. In fact, I only visited that office
approximately once per month during the period that Roger Cecil Williams was an
employee of Orion Pacific, Inc.


We disagree with the Williamses that these affidavits are inadequate. The affidavits establish that
Fowler and Chaffee were corporate officials within the Crown Central guidelines, that neither of
them participated in the day-to-day activities at the facility where Williams was injured, and that they
had no discoverable personal knowledge. Both lived and worked in Houston and only occasionally
visited the Odessa facility. Consequently, the protective order was properly entered until such time
as the Williamses attempted to obtain discovery through less intrusive methods. Depending upon
the circumstances of the particular case, these less intrusive discovery methods should include the
depositions of lower level employees, the deposition of the corporation itself, and interrogatories and
requests for production of documents directed to the corporation. Crown Central, 904 S.W.2d at
128; AMR Corp. v. Enlow, 926 S.W.2d 640, 643 (Tex.App.--Fort Worth 1996, no pet.). Merely
completing some less-intrusive discovery does not trigger an automatic right to depose the apex
official. See Crown Central, 904 S.W.2d at 128. 

 As we have detailed, the Williamses took the deposition of Nicholas Fowler, the brother of
Michael Fowler. Nicholas Fowler was the president and chief operating officer of Orion, vice
president of Madison, and Williams' employer at the time of the injury. He testified as to the
corporate structure of the entities, and the design, use, and safety of the trommel. The Williamses
have failed to show how they were deprived of any relevant information had they been able to depose
the two other corporate officials. Having failed to demonstrate how Chaffee or Fowler had any
unique or superior personal knowledge of discoverable information and having failed to establish
that they were unable to conduct discovery through less intrusive means, we overrule Issue One. 

INADEQUATE DISCOVERY?


 In Issue Two, the Williamses complain that summary judgment was granted before they were
able to complete discovery. In particular, they fault the trial court for its failure to rule on their
requested production of twenty-two documents they believe are relevant to the matters composing
the basis of their claims. 

 The Williams initially sought production of thirty-four documents through a subpoena duces
tecum attached to the deposition notice of Nicholas Fowler. Madison objected and sought a
protective order. The court granted the motion on some of the documents, found it was not
necessary for Madison to produce some of the others, and found that a few of the documents had
already been produced or could be obtained from the Secretary of State. The court then ordered:

 As to numbers 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28,
29, 30, 31, 32, the Court withheld any ruling on these items until a later date.


The Williamses sought the same documents through the deposition notices issued to Michael Fowler
and Jay Chaffee. They also filed a motion to compel and a motion for sanctions, which the court
failed to rule upon before granting summary judgment. The disputed documents include the
following:

 11. Copies of all documents sent to you by OSHA in the years 1996, 1997, 1998, and
1999 also include Orion Pacific, Inc. [sic]


 12. Copies of all documents sent to you by EPA (Environmental Protection Agency)
for the years 1996, 1997, 1998 and 1999.


 13. Copies of all documents sent to you by any Texas agency concerning the safety
of the operation of your plant. 


 14. Copies of all complaints/Plaintiff's Original Petitions, whether in Federal Court
and/or state court which would include Texas or any other state since 1995 to the
present.


 15. Copies of all documents sent to the Worker's Compensation carrier for Orion
Pacific, Inc. when Roger Cecil Williams was hurt on March 8, 1999.


 16. Copy of any report and/or document prepared for this case.


 17. Copy of all checks and/or receipts for construction of the cage and its parts in
which Roger Cecil Williams was injured on March 8, 1999.


 18. Copy of any document which was used prior to March 8, 1999 in the used [sic]
of the cage where Roger Cecil Williams was serious hurt on the use of the cage.


 19. Each sales slip, receipt, charge account statement, invoice bill, cancelled check,
purchase order, lease or agreement, or other document which was issued or recorded
because of the sale, purchase or lease of the product which is the subject of this
litigation.


 20. Each sales slip, receipt, charge account statement invoice bill, cancelled check,
warranty, purchase order, lease agreement or other document which was issued or
recorded because of the installation of the cage by the Defendant.


 21. With respect to each and every item described in the immediately preceding
requests which is not in the physical possession or custody of the Defendant, but
which is in the Defendant's control, the Plaintiff hereby requests that the Defendant
execute authorizations to allow the Plaintiff to obtain and examine such items.


 22. Each and every statement, printed or graphic representation, catalogue, circular,
manual[,] brochure, report, memorandum, transcript, communication, letter, label,
advertisement, or other document which mentions, describes or otherwise refers to
any component part of the cage.


 23. Each and every statement, printed or graphic representation, catalogue, circular,
manual, brochure, report, memorandum, transcript, communication, letter, label,
advertisement, or other document which in any way mentions, describes or otherwise
refers to any change made in the design according to which the case was
manufactured.


 24. Each and every statement, printed or graphic representation, catalogue, circular,
manual, brochure, report, memorandum, transcript, communication, letter, label,
advertisement, or other document which in any way mentions, describes, or otherwise
refers to any defective condition that existed, exists, or is thought to have existed or
is thought to exist in the cage.


 25. Each and every statement, report, memorandum, transcript, letter, or other
document which in any way mentions, describes, or otherwise refers to any repairs
or maintenance the Defendant performed on the cage.


 26. Each and every statement, printed or graphic representation, catalogue, circular,
manual, brochure, report, memorandum, transcript, communication, letter, label,
advertisement, direction, procedure, or other document which in any way mentions,
describes or otherwise refers to any possible, alternative, recommended, or
foreseeable use of the cage.


 27. Each and every statement, printed or graphic representation, catalogue, circular,
manual, brochure, report, memorandum, transcript, communication, letter, label,
advertisement, direction, procedure, or other document which mentions, describes,
or in any way refers to any precaution taken by the Defendant in order to prevent any
harm due to the cage.


 28. Each and every statement, printed or graphic representation, catalogue, circular,
manual, brochure, report, memorandum, transcript, communication, letter, label,
advertisement, direction, procedure, or other document which in any way mentions,
describes or otherwise refers to any warning, instruction, or direction for the benefit
of users of the cage.


 29. Each and every statement, printed or graphic representation, catalogue, circular,
manual, brochure, report, memorandum, transcript, communication, letter, label,
advertisement, direction, procedure, or other document which in any way mentions,
describes, or otherwise refers to any process involved in the production of the cage.


 30. Each and every statement, printed or graphic representation, catalogue, circular,
annual [sic], brochure, report, memorandum, transcript, communication, letter, label,
advertisement, direction, procedure, or other document which in any way mentions,
describes, or otherwise refers to any component part which was a part of the cage and
which was purchased, leased or otherwise obtained by the Defendant from a third
party.


 31. Each and every statement, printed or graphic representation, catalogue, circular,
annual [sic], brochure, report, memorandum, transcript, communication, letter, label,
advertisement, direction, procedure, or other document which in any way mentions,
describes, or otherwise refers to any testing or inspection performed by the
Defendant, or any agent or employee thereof, on the cage prior to March 8, 1999.


 32. With respect to each and every item described in the immediately preceding
requests which is not in the physical possession or custody of the Defendant, but
which is in the Defendant's control, the Plaintiff hereby requests that the Defendant
execute authorizations to allow the Plaintiff to obtain and examine such items.


 33. Detailed schematic drawings of the cage/industrial compactor where the injuries
occurred.


 34. Current resume and bibliography of the individual who designed the cage/
industrial compactor.

.

While each of these requests relates to the underlying claims alleged by the Williamses, not a single
one would have prevented entry of summary judgment in Madison's favor. Assuming without
deciding that the trial court erroneously failed to rule on the production requests, any error is
harmless. The trial court found that the Williamses were precluded from recovery on each of their
claims by virtue of the Texas Labor Code, and they do not argue otherwise. Accordingly, we
overrule issue two. Having overruled both issues for review, we affirm the judgment of the trial
court below.



October 2, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.
1. An apex deposition is the deposition of a corporate officer at the apex of the corporate hierarchy. Crown
Central Petroleum Corp. v. Garcia, 904 S.W.2d 125, 126 (Tex. 1995).