**In re TEXAS GENCO, LP, n/k/a Texas Genco II, LP.**

No. 10–05–00239–CV.

Court of Appeals of Texas, Waco.

Aug. 10, 2005.

John Anaipakos, Baker & Botts, Houston, Joe B. Cannon, Cannon & Simmons,

Groesbeck, David E. Jackson, Jackson, Sjoberg McCarthy & Wilson, Austin, for appellant/relator.

Brian D. Melton, Susman Godfrey LLP, Houston, Bobby Reed, Reed & Reed, Groesbeck, Roger Townsend, Alexander, Dubose Jones & Townsend LLP, Austin, for other.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Texas Genco seeks a writ of mandamus directing Respondent, the Honorable H.D. Black, Jr., Judge of the 77th District Court of Freestone County, to vacate an order permitting Valence Operating Company to depose Texas Genco's chief executive officer. We will conditionally grant the requested relief.

Texas Genco operates a power plant located on property in Limestone and Freestone Counties and known as the Limestone Electric Generating Station. Texas Genco also owns the surface estate of a neighboring 392–acre tract of land which is designated as a solid waste facility for the disposal of waste byproducts generated by the plant. Valence owns significant mineral interests in the disposal site property.

Valence obtained a permit from the Railroad Commission to drill a gas well on the property, entered the land, and prepared a site for the well. Texas Genco filed suit seeking a temporary restraining order and seeking to enjoin Valence from drilling the well. Texas Genco's suit contends that Valence's drilling activities breach Valence's duty to accommodate Texas Genco's rights as the owner of the surface estate because drilling at the contemplated location "would permanently and irreversibly damage [Texas Genco's] long-planned,

TCEQ-approved use of the land as a Disposal Site."

Valence contends that its operations will not interfere with Texas Genco's current use of the property because Texas Genco is not presently disposing (and has never disposed) of waste byproducts from the Limestone Plant at the property. Thus, Valence argues that discovery regarding profitability, revenues, and costs for the Limestone Plant and regarding Texas Genco's future plans for the Limestone Plant are "critical" to determine whether the proposed drilling will substantially impair Texas Genco's use of the land.

When Valence sought to depose Texas Genco CEO Jack Fusco, Texas Genco responded with a motion to quash Fusco's deposition notice and, in response to Valence's motion to compel, a motion for protection. Texas Genco supported its motion for protection with Fusco's affidavit, which states in pertinent part:

- "I am the Chief Executive Officer of Texas Genco LLC. . . . Prior to [Texas Genco's] acquisition [of the Limestone Plant] in December 2004, I had no involvement in the operation or management of the Limestone Plant. . . ."
- "I have no specialized or unique knowledge of the operations of the Limestone Plant, or of its landfill. I have no personal knowledge of Texas Genco's disputes with Valence concerning the landfill at the Limestone Plant, or of this lawsuit, other than what has been reported to me by our Chief Legal Officer, outside counsel, and whatever information about the litigation was included in due diligence materials related to the acquisition of the plants from Texas Genco Holdings, Inc."
- "The Limestone Plant has its own management, which is responsible for its day to day operations, including

the landfill. Don Poe is the manager of the Limestone Plant. Mr. Poe does not report directly to me."

At a hearing on the parties' competing motions, Valence argued that Fusco should be deposed because: (1) he was "the chief architect" of the transaction by which Texas Genco purchased assets from Centerpoint Energy, including the Limestone Plant and knows the details of that transaction; (2) he has "relevant information about the transaction, valuation, profitability, [and] how [the Limestone Plant fits within] the grand scheme [of Texas Genco operations]"; and (3) Valence has been unable to obtain this information in the depositions of two other witnesses offered by Texas Genco.

Texas Genco replied that Fusco should not be ordered to submit to a deposition because Valence did not show that he possesses unique or superior personal knowledge of discoverable information.

Respondent granted Valence's motion to compel and denied Texas Genco's motion for protection.

Texas Genco contends that the court abused its discretion by permitting Valence to depose Fusco because Valence did not show that: (1) Fusco has "any unique or superior personal knowledge of discoverable information"; or (2) less intrusive means of discovery have proven insufficient.

■ According to the apex deposition doctrine, when a party seeks to depose a high level corporate official, a corporation may seek to shield the official from the deposition by filing a motion for protection supported by the official's affidavit denying knowledge of any relevant facts. *In re Alcatel USA, Inc.,* 11 S.W.3d 173, 175 (Tex.2000) (orig.proceeding). A trial court determines such a motion by first deciding whether "the party seeking the deposition

has 'arguably shown that the official has any unique or superior personal knowledge of discoverable information.'" *Id.* at 175–76 (quoting *Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 128 (Tex.1995) (orig.proceeding)).

"If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should" not allow the deposition to go forward without a showing, after a good faith effort to obtain the discovery through less intrusive means, "(1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate."

*Id.* at 176 (quoting *Crown Cent. Petroleum,* 904 S.W.2d at 128).

Valence cites *In re Columbia Rio Grande Healthcare, L.P.* for the proposition that Fusco's affidavit did not adequately deny knowledge of relevant facts to invoke the apex deposition analysis. 977 S.W.2d 433 (Tex.App.-Corpus Christi 1998, orig. proceeding). Texas Genco relies on a more recent decision of the Fort Worth Court to support its contention that Fusco's affidavit is sufficient. *See In re Burlington N. & Santa Fe Ry.,* 99 S.W.3d 323 (Tex.App.-Fort Worth 2003, orig. proceeding).

In *Columbia Rio Grande Healthcare,* a negligent credentialing case, Columbia identified its CEO in discovery as "the person most knowledgeable regarding [physician contracts]." 977 S.W.2d at 434. The plaintiffs sought to depose the CEO, and Columbia filed a motion to quash the deposition notice. The trial court denied this motion. The appellate court denied Columbia's mandamus petition, concluding that, even though the CEO in his affidavit

"denied personal knowledge of many aspects of the lawsuit," he did not deny knowledge of the hospital's physician contracts or of the hospital's credentialing practices, and he did not broadly deny "any knowledge of relevant facts." *Id.*

Conversely, in the *Burlington Northern* case, the court concluded that the corporate executive's statements in his affidavit (1) that he had no knowledge of the facts of the suit, (2) that he had "no unique or superior knowledge or information regarding any aspect of this case," and (3) that he had "no personal knowledge of the condition of [the railroad] crossing at the time of the accident made the basis of this suit," were sufficient to invoke the apex deposition analysis, even though the executive did not generally deny knowledge of any relevant facts. 99 S.W.3d at 326 n. 3.

Here, Fusco stated in his affidavit that he had no involvement in the operations of the Limestone Plant before Texas Genco purchased the plant in December 2004 (more than two months after Valence applied with the Railroad Commission for its drilling permit). Fusco also stated that he has "no specialized or unique knowledge of the operations of the Limestone Plant, *or of its landfill.*" (emphasis added).

The issue in the underlying lawsuit is whether Valence's proposed well will preclude or impair "an existing use by the surface owner." *Tarrant County Water Control & Improvement Dist. v. Haupt, Inc.,* 854 S.W.2d 909, 911 (Tex.1993) (quoting *Getty Oil Co. v. Jones,* 470 S.W.2d 618, 622 (Tex.1971)).

■ Fusco denied having any specialized or unique knowledge of the day-to-day operations of the Limestone Plant or of the disposal site where Valence desires to drill. We hold that Fusco sufficiently denied knowledge of any relevant facts regarding any existing usage of the disposal site to shift the burden to Valence to show otherwise. *See Alcatel USA,* 11 S.W.3d at 175–76; *Burlington N. & Santa Fe Ry.,* 99 S.W.3d at 326.

■ Valence responded by arguing that Fusco's central role in conceiving and implementing the multibillion dollar transaction which included the purchase of the Limestone Plant establishes that Fusco has specialized knowledge regarding the value of the Limestone Plant, its significance to Texas Genco, and the plans for its future operations. Although Fusco may well possess such knowledge, his knowledge of the financial aspects of Texas Genco's operations has little bearing on the current uses of the disposal site where Valence intends to drill its well. Accordingly, we hold that Valence failed to arguably show that Fusco "has any unique or superior personal knowledge of discoverable information." *See Alcatel USA,* 11 S.W.3d at 175.

■ Nevertheless, Valence also contends that it has been unable to obtain the discovery it needs by less intrusive means. *Id.* at 176. To support this contention, Valence argues that (1) Texas Genco has vigorously resisted complying with written discovery requests for several months and (2) Valence has deposed two Texas Genco employees with unsatisfactory results. However, Valence made only the latter argument in the hearing on its motion to compel. Thus, we consider only the latter argument on the issue of whether Valence has been unable to obtain the discovery it seeks by less intrusive means. *Cf. In re Wharton,* —— S.W.3d ——, ——, No. 10–04–00315–CV, 2005 WL 1405732, at *3-4 & *6, 2005 Tex.App. LEXIS 4572 at 13–14 & n. 8 (Tex.App.-Waco June 15, 2005, orig. proceeding) (declining to consider evidence not presented to the respondent in the underlying proceeding).

Texas Genco notes that Valence has not served a deposition notice under Rule of Civil Procedure 199.2(b)(1) requiring Texas Genco to designate one or more witnesses to testify on its behalf.

On the mandamus record properly before us, we hold that Valence failed to show that it has "made a *reasonable* effort" to obtain the information sought through less intrusive means of discovery. *See In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig.proceeding). Thus, Respondent abused his discretion by denying Texas Genco's motion for protection.

Texas Genco has no adequate remedy at law. *In re El Paso Healthcare Sys.*, 969 S.W.2d 68, 75 (Tex.App.-El Paso 1998, orig. proceeding). Therefore, we conditionally grant the requested writ of mandamus. The writ will issue only if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that he has vacated the order requiring Texas Genco to produce Fusco for deposition.

Justice VANCE dissenting.

BILL VANCE, Justice, dissenting.

The action of the court is void because Chief Justice Gray is disqualified. Even if it is not void, the trial judge did not abuse his discretion when he denied the motion to quash the deposition of Jack Fusco, CEO of the Relator, which is the party that filed the underlying suit. Accordingly, I dissent.

Chief Justice Gray filed a "Certification of Disqualification" in Cause No. 10–05–00244–CV, another mandamus proceeding in which CenterPoint Energy, Inc. was the Relator. *See In re Centerpoint Energy, Inc.*, No. 10–05–00244–CV (Tex.App.-Waco June 6, 2005, certification). The issue in that case arose in the same underlying case, when the Real Party in Interest filed a notice to take the deposition of CenterPoint's CEO David McClanahan. We conditionally issued a writ of mandamus.[1] *See In re Centerpoint Energy, Inc.*, 2005 WL 1531827 at *9–10 (Tex.App.Waco June 29, 2005, orig. proceeding).

The Petition for Writ of Mandamus in this case explains: "At the time this lawsuit was filed, Texas Genco, LP was an indirect, wholly-owned subsidiary of CenterPoint Energy, Inc.... In December 2004, Texas Genco, LLC—through its wholly-owned subsidiary Texas Genco II, LP—acquired all of Texas Genco's non-nuclear power generation assets, including the Limestone Plant, from CenterPoint.... Accordingly, Texas Genco II, LP is Texas Genco, LP's successor." The reporter's record filed in this proceeding shows that the separate motions to quash, filed by CenterPoint and Relator, were heard, and denied, in the same hearing.

For reasons not entirely clear, Chief Justice Gray communicated directly to the parties on June 29, 2005, by letter signed only by him, that (1) his wife is represented by Susman Godfrey, counsel for Valence Operating Company, the Real Party in Interest, (2) his wife owns stock in CenterPoint Energy, Inc., and (3) although she formerly owned stock in Texas Genco, the Relator, it was sold in a forced sale in the Fall of 2004. He expressed the opinion that he is not disqualified or subject to recusal but set a deadline of July 20 for filing such a motion.[2] That letter was

---

1. We also have a direct appeal pending involving these parties, *Texas Genco, LP v. Valence Operating Co.*, No. 10–04–00365–CV.

2. Even if it were necessary to communicate directly with the parties, no opinion should be expressed on a matter not then pending before the court. Stating in advance that no grounds for disqualification or recusal exist is

neither approved by nor joined by any other justice.

After counsel for Texas Genco responded, Chief Justice Gray again communicated directly to the parties on July 6, by a letter signed only by him, raising "two issues regarding Center Point's involvement" and asking these questions:

- Has CenterPoint been, or is it likely to be, a party to the underlying litigation?
- Is there any way that CenterPoint is or could be impacted financially as a result of the underlying litigation?
- Is Centerpoint now simply a person from whom discovery is sought that is no longer a party to the underlying litigation?
- Whether the prior involvement of CenterPoint as a party in this litigation, and the prior ownership interest in Genco, is a ground for constitutional disqualification or for recusal?
- What is the nature of the discovery sought from CenterPoint?
- If the discovery could be material to the result, is it different than if the discovery provided by CenterPoint is largely uncontested or otherwise immaterial?

The letter asks for briefing on the first four questions.[3] As with the first letter, neither of the other justices on the panel in this case approved the letter nor joined in sending it.

Why is this important? Because disqualification[4] on constitutional grounds cannot be waived and may be raised even after the judgment is beyond appeal. *Fry*

*v. Tucker*, 146 Tex. 18, 202 S.W.2d 218, 221–22 (1947). An order or judgment rendered by a constitutionally disqualified judge is void. *See In re Union Pac. Resources Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig.proceeding). A disqualification is a disqualification; it does not depend on "likelihood," "could be," "materiality," or whether a matter is "uncontested."

Recusal is another matter. Grounds for *recusal* of an appellate judge are essentially the same as those provided in the Rules of Civil Procedure. *Id.*; Tex.R.App. P. 16.2; Tex.R. Civ. P. 18b(2). Grounds for recusal can be waived after fully disclosed on the record. Tex.R. Civ. P. 18b(5). Here, the question would be full disclosure. If it was necessary to send the letters described above, in my view more information should have been provided, including for example:

- the name of counsel at Susman Godfrey who is handling the injury claim;
- if a case is pending, how long has it been pending and the status of the case;
- whether claims are included that belong to the community estate;
- additional information about the financial interests in the party-companies, including whether, as addressed in rule of procedure 18b(4)(d), a relationship such as director or advisor or other active participation in the affairs of either company exists; and
- an offer to provide any information that a party might reasonably request to evaluate the merits of a possible motion to disqualify or recuse.

bound to have a "chilling effect" on the parties.

3. This is the first time in my almost fifteen years on the court that a single justice has requested briefing on a matter that pertained only to that justice.

4. An appellate judge, unlike a trial judge, may be *disqualified* only on constitutional or statutory grounds, not on the basis of the rules of procedure. *New Products, Inc. v. Strong Industries, Inc.*, 129 S.W.3d 594, 598 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

Full disclosure would include information about a spouse's holdings and relationships. *See* TEX.R. CIV. P. 18b(3) ("A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse...."). The information presented was not sufficient to evaluate the need for a recusal motion.

Texas Genco's counsel responded to Chief Justice Gray's request, acknowledging that CenterPoint was the parent of Texas Genco, that a direct pecuniary or personal interest in the results of a case disqualifies a judge, that being a stockholder in a corporation disqualifies a judge when the corporation is a party, that Chief Justice Gray's wife still owns CenterPoint stock,[5] that the Real Party in Interest has served discovery on CenterPoint that "will no doubt be burdensome for CenterPoint Energy and will cause it to incur attorney's fees and other expenses." The response asserts that no Texas authority has been identified where third party discovery rises to the level of a direct and substantial financial interest but acknowledges that the rules provide for recusal of a judge who knows that his spouse has a financial interest in a party to the proceeding or any other interest that could be substantially affected by the outcome of the proceeding.

Notwithstanding Chief Justice Gray's direct request for briefing with a July 20 deadline, Valence Operating Company, the Real Party in Interest, replied on July 28 without briefing, essentially adopting Texas Genco's position.[6] Susman Godfrey has not responded.

Believing that the order is void because CenterPoint is a party to the proceeding below and that the ruling on the merits is wrong, I dissent.

---

5. The presumption is that the stock is community property.

6. In the direct appeal, Valence advised the Clerk that it was "aware of" no grounds for disqualification or recusal.