Opinion issued August 4, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00613-CV 




IN RE BP PRODUCTS NORTH AMERICA INC., Relator




Original Proceeding on Petition for Writ of Mandamus




MEMORANDUM OPINION

           By petition for writ of mandamus, relator, BP Products North America Inc.,
challenges the trial court’s June 21, 2006 order granting the motion of the Plaintiffs’
Steering Committee (“Plaintiffs”)


 to strike BP’s “‘Objection’ to and/or Motion for
Protection Regarding the Deposition of John Manzoni,” Group Managing Director
and Chief Executive of Refining and Marketing of BP p.l.c.


 In its sole issue, BP
contends that the trial court abused its discretion in striking the affidavit of Manzoni
as insufficient to invoke protection under the “apex doctrine” established in Crown
Central Petroleum Corp. v. Garcia, 904 S.W.2d 125 (Tex. 1995).



          We conditionally grant the petition for writ of mandamus.
Background


 On June 1, 2006, the Plaintiffs notified BP of their intent to depose Manzoni. 
On June 6, BP moved for protection and moved to quash the notice on the grounds
that Manzoni, a resident of London, England, was not subject to deposition in Texas. 
Footnoted in BP’s motion was an objection to Manzoni’s deposition on the grounds
that Manzoni, an “upper level corporate official,” was not subject to deposition under
the Crown Central guidelines. BP stated that it would later file a brief in support of
its objection. On June 14, the Plaintiffs moved to strike as legally insufficient BP’s
motion to quash and BP’s “‘Objection’ to the deposition of John Manzoni” because
BP had not filed the requisite affidavit by Manzoni. 
          On June 16, BP submitted its brief in support of its apex objection and
appended the affidavit of Manzoni, which stated as follows, in pertinent part:
3. I am Chief Executive of Refining and Marketing of BP p.l.c. and
have held this position since 2002. I am also a Group Managing
Director of BP p.l.c. and have held this position since 2003. In my
positions, I have global responsibility for refining and marketing and
ultimate responsibility for 17 refineries, a similar number of chemical
plants, 25,000 retail stations, pipelines and terminals. I report directly
to Lord Browne, who is Group Chief Executive of BP p.l.c. and the
highest official in BP p.l.c.
           . . . 
5. I am not a director, officer or employee of BP Products North
America Inc., an indirect wholly owned subsidiary corporation of BP
p.l.c. . . . BP Products North America Inc. owns and operates the Texas
City Refinery. I do not manage or authorize the day-to-day operations
of BP Products North America Inc. or of the Texas City Refinery.
6. I do not have unique or superior knowledge of information, much
less unique or superior personal knowledge, concerning the allegations
made in the lawsuits arising out of the March 23, 2005 accident at the
BP Products North America’s Texas City Refinery. Information
concerning the accident and the investigation of the accident was
provided to me from employees of both BP p.l.c. and BP Products North
America Inc. I did not participate in the investigation of the March 23,
2005 accident. I therefore have no personal knowledge of facts relevant
to the accident or the allegations made in the lawsuits filed against BP
Products North America Inc. 
7. I have no unique personal knowledge of the Texas City facility or its
operations, including any safety issues or concerns. Information
concerning the Texas City facility or its operations, including any safety
issues or concerns was provided to me from employees of both BP p.l.c.
and BP Products North America Inc., including Michael Hoffman,
Group Vice President for Refining, who reports to me on these issues. 
8. Thus, the only knowledge I have concerning the accident, the
investigation of the accident and the other allegations made against BP
Products North America Inc. is second hand. Certainly, I do not possess
relevant knowledge equal to or greater in quality or quantity than
executives and employees of BP Products North America Inc. or other
executives or employees of BP p.l.c.
9. After the March accident, BP Products North America Inc., in part
with the aid of loaned personnel from affiliated companies, immediately
began an investigation of the incident. That investigation was
performed by a group of highly qualified and knowledgeable
individuals, who were directed to use all resources to find the causes of
the accident and to report the causes to the public. All of these activities
were at the direction of and monitored by persons other than me,
although I have kept myself informed about the progress and results of
the investigation.
          On June 19, BP filed a second motion for protection based on its objection and
filed a response to Plaintiffs’ motion to strike. On June 20, the Plaintiffs filed a brief
in support of their motion to strike, objecting to Manzoni’s affidavit on the grounds
that he admitted having knowledge concerning the accident and that he failed to state
that he has “‘no knowledge of any facts relevant’ to this lawsuit as Crown Central
and Alcatel require.” In addition, the Plaintiffs filed a supplemental motion to strike,
voicing the same contentions. 
          On June 21, after a hearing, the trial court granted the motion to strike, ordering
that 
BP Products’ Motion for Protection for and/or objection to the
deposition of John Manzoni on alleged “apex” grounds is
stricken/denied/overruled because, in the exercise of the Court’s
discretion, it finds that BP has failed to invoke properly that doctrine by
failing to file an affidavit complying with Crown Central and Alcatel
and has not, therefore, presented an issue for this Court to decide. In
addition, this Court specifically finds that Mr. Manzoni has admitted
knowledge of relevant facts of the case precluding reliance on Apex.
 
It is from this order that BP seeks mandamus relief.
 
Standard of ReviewA party is entitled to mandamus relief if a trial court abuses its discretion or
violates a legal duty and the party has no adequate remedy by appeal. Walker v.
Packer, 827 S.W.2d 833, 839–40 (Tex. 1992); In re Taylor, 113 S.W.3d 385, 389
(Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). A trial court abuses its
discretion if “it reaches a decision so arbitrary and unreasonable as to amount to a
clear and prejudicial error of law.” Walker, 827 S.W.2d 839–40; see Taylor, 113
S.W.3d at 389. With respect to factual issues, matters are committed to the trial
court’s discretion, and the reviewing court may not substitute its judgment for that of
the trial court. Walker, 827 S.W.2d at 839; Taylor, 113 S.W.3d at 389. The relator
must establish that the trial court reasonably could have reached only one decision. 
Walker, 827 S.W.2d at 840. With respect to a trial court’s determination of legal
principles, however, review is less deferential. Id.; Taylor, 113 S.W.3d at 389. A trial
court has no discretion to incorrectly determine what the law is or to improperly apply
the law to the facts. Walker, 827 S.W.2d at 840. A clear failure by the trial court to
analyze or apply the law correctly will constitute an abuse of discretion and may
result in an extraordinary writ. Id. 
          Generally, the scope of discovery is within the trial court’s discretion. In re
Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998). However, the trial court
abuses its discretion if it issues a discovery order in an arbitrary or unreasonable
manner, or without reference to guiding rules and principles. See id. If there has
been a clear abuse of discretion and there is no adequate remedy by appeal,
mandamus will issue to correct the order.  Id. Mandamus relief is appropriate if the
trial court erroneously permits the deposition of an apex official. In re Alcatel USA,
Inc., 11 S.W.3d 173, 175–76 (Tex. 2000).
Apex Deposition
          In ordering or preventing an apex deposition, a trial court must apply the
guidelines set out in Crown Central Petroleum Corporation v. Garcia, 904 S.W.2d
125 (Tex. 1995). In re Daisy Mfg. Co., 17 S.W.3d 654, 656 (Tex. 2000). Under
Crown Central, a corporation may shield a high-level corporate official from a
deposition by filing a motion for a protective order with an affidavit by the official
“denying any knowledge of relevant facts.” Crown Central, 904 S.W.2d at 128.


 
The trial court determines the motion by first considering whether the proponent of
the deposition has “arguably shown that the official has any unique or superior
personal knowledge of discoverable information.” Id. If the proponent fails to make
such a showing, “the trial court should grant the motion for protective order and first
require the party seeking the deposition to attempt to obtain the discovery through
less intrusive methods.” Id. These methods could include taking the depositions of
lower-level employees or directing discovery requests to the corporation itself. Id. 
 If, after making a good faith effort to obtain the discovery through less intrusive
means, the proponent shows that (1) there is a reasonable indication that the official’s
deposition is calculated to lead to the discovery of admissible evidence and (2) that
less intrusive methods of discovery are insufficient, the trial court should modify or
vacate the protective order. Id.
          Since Crown Central, the Texas Supreme Court has clarified that it is improper
to collapse the two discrete inquiries in Crown Central into a single test. Alcatel, 11
S.W.3d at 176. For instance, the Crown Central guidelines should not be interpreted
to require a party seeking an apex deposition to show that the official to be deposed
has unique or personal knowledge that is unavailable through less intrusive means. 
Id. 
          At issue in the instant case is whether Manzoni’s affidavit is sufficient to
invoke protection from deposition under Crown Central. Pursuant to Crown Central,
the apex deposition guidelines are invoked by including with a motion for a
protective order, an affidavit by the official “denying any knowledge of relevant
facts.” Crown Central, 904 S.W.2d at 128. Here, the trial court found that BP failed
to properly invoke the Crown Central doctrine because it failed “to file an affidavit
complying with Crown Central and Alcatel.” In addition, the trial court found that
Manzoni had admitted knowledge of relevant facts of the case, which precluded
reliance on the apex doctrine. 
          The Plaintiffs contend that, because Manzoni’s affidavit failed to specifically
deny “any knowledge of relevant facts,” it was properly found to be insufficient to
invoke the apex doctrine. Specifically, the Plaintiffs contend that Manzoni’s affidavit
as insufficient because it uses the following qualifying language:
6. I do not have unique or superior knowledge of information, much
less unique or superior personal knowledge concerning the allegations
made in the lawsuits arising out of the March 23, 2005 accident at the
BP Products North America’s Texas City Refinery. Information
concerning the accident and the investigation of the accident was
provided to me from employees of both BP p.l.c. and BP Products North
America Inc. I did not participate in the investigation of the March 23,
2005 accident. I therefore have no personal knowledge of facts relevant
to the accident or the allegations made in the lawsuits filed against BP
Products North America Inc. (Emphasis added).
7. I have no unique personal knowledge of the Texas City facility or its
operations, including any safety issues or concerns. . . . (Emphasis
added).In addition, the Plaintiffs contend that Manzoni admits that he has knowledge
regarding the matters at issue, as follows: 
6. . . . Information concerning the accident and the investigation of the
accident was provided to me from employees of both BP p.l.c. and BP
Products North America Inc. . . . 
8. Thus, the only knowledge I have concerning the accident, the
investigation of the accident and the other allegations made against BP
Products North America Inc. is second hand. . . . (Emphasis added).

          During the hearing on the motion to strike, the Plaintiffs raised the following
as evidence that Manzoni has knowledge of relevant facts: (1) testimony that the
Chemical Safety Board reported that one of the causes of the explosion was a lack of
corporate oversight and that Manzoni is “the guy in charge of corporate oversight”
and (2) testimony that, the day after the explosion, Manzoni flew in from Great
Britain and gave a press conference in Texas City, during which he stated that “on
behalf of the corporate parent we take responsibility for this, we’ll get to the bottom
of it and we’ll fix it.”

          In addition, the Plaintiffs presented to the trial court for in camera inspection
a letter from BP’s CEO, Lord John Browne, to BP staff regarding the interim
conclusions and recommendations prepared by the team of personnel investigating
the explosion (“Fatal Accident Report”) stating that “I have asked John Manzoni to
lead the next stage of implementation within the Refining and Marketing segment. 
He will insure that all the changes necessary are made.” Further, Plaintiffs contend
that BP’s website states that “When an explosion at the Texas City Refinery in the
U.S. killed 15 people and injured 170 last March, Manzoni handled the situation with
care and sensitivity.”The Plaintiffs rely on In re Columbia Rio Grande Healthcare, 977 S.W.2d 433,
434 (Tex. App.—Corpus Christi 1998, orig proceeding), as “the only reported case
involving a potential deponent who, like Mr. Manzoni here, admits knowledge about
the case in question.” In Columbia, an official’s affidavit “did not contain a broad
denial of ‘any knowledge of relevant facts” and denied only that he had “personal
knowledge of many aspects of the lawsuit.” Id. The court held that the official’s
affidavit “failed to satisfy the threshold requirement of Crown Central, to ‘deny any
knowledge of relevant facts.’” Id. However, Columbia has been cited solely in
apparent disagreement.


 

          BP contends that the affidavit is sufficient to invoke Crown Central because
it properly denies knowledge of relevant facts. Specifically, BP contends that, while
Manzoni’s affidavit does not specifically deny “any knowledge of relevant facts,” the
language in the affidavit has been interpreted to satisfy Crown Central. BP contends
that Crown Central does not require the use of any “magic words.” In addition, BP
contends that the Plaintiffs failed in their burden to demonstrate, as required under
Crown Central, that Manzoni has “unique or superior personal knowledge.” Plaintiffs
respond that, because the doctrine was not invoked, the burden never shifted to the
Plaintiffs to show “unique or superior personal knowledge.” 

          BP argues that, since Crown Central, there are only a few cases in which
appellate courts have affirmed refusals to quash apex depositions, citing JHC
Ventures L.P. v. Fast Trucking, Inc., 94 S.W.3d 762, 777–78 (Tex. App.—San
Antonio 2002, no pet.) and In re Columbia Rio Grande Healthcare, 977 S.W.2d 433,
434 (Tex. App.—Corpus Christi 1998, orig proceeding). 

          In JHC, the appellate court upheld the trial court’s refusal to quash a deposition
of an apex affidavit official because the trial court was within its discretion to find
that the company was “wrongfully resisting discovery” of the official. JHC, 94
S.W.3d at 777–78. Importantly, in JHC, the party wishing to depose the apex official
presented deposition testimony by a witness who said that the apex official was the
“only person” with knowledge of relevant facts. Id. The court’s decision, therefore,
was not premised on the adequacy of the apex official’s affidavit, but rather on the
evidence introduced that rebutted the contents of the affidavit. Id. at 778. JHC,
therefore, is distinguishable from the situation before us. As discussed above,
Columbia has been exclusively met with disagreement.

          We think that the better rule is that a mechanical application of Crown Central
in determining the sufficiency of an affidavit to invoke the apex doctrine is to be
rejected. See In re Texas Genco, 169 S.W.3d 764, 768 (Tex. App.—Waco 2005, orig.
proceeding) (concluding that affidavit in which official attested that he had “no
involvement in the operation or management of the [plant]” and had “no specialized
or unique knowledge of the operations” and “no personal knowledge . . . other than
what has been reported to me” was sufficient to invoke protection under Crown
Central doctrine); In re Burlington N. and Santa Fe Ry. Co., 99 S.W.3d 323, 326 n.3
(Tex. App.—Fort Worth 2003, orig. proceeding) (concluding that affidavit in which
official attested that he had “no specific or superior knowledge with regard to the
. . . issue in the suit or with regard to any other aspect of the case” was sufficient to
invoke protection under Crown Central doctrine and explaining that there is no
requirement that a party must specifically recite language of Crown Central in an
affidavit to show that affiant has no knowledge of relevant facts); In re El Paso
Healthcare Sys., 969 S.W.2d 68, 73 (Tex. App.—El Paso 1998, orig. proceeding)
(concluding that affidavit in which official attested that he had no personal
knowledge of the employees’ jobs or of the day-to-day administration was sufficient
to invoke protection under Crown Central doctrine); AMR Corp. v. Enlow, 926
S.W.2d 640, 643–44 (Tex. App.—Fort Worth 1996, no pet.) (concluding that
affidavit in which official attested that he had no “personal knowledge of the conduct,
actions, or events at issue,” or “the training” employees received, or “the decisions
related to or procedures for changing” policies was sufficient to invoke protection
under Crown Central doctrine). 

          Based upon an analysis of these cases, the following specific statements in
Manzoni’s affidavit constitute a sufficient denial of relevant facts to invoke
protection under Crown Central:5. . . . I do not manage or authorize the day-to-day operations of BP
Products North America Inc. or of the Texas City Refinery. (Emphasis
added). 
See Texas Genco, 169 S.W.3d 766; El Paso Healthcare Sys., 969 S.W.2d at 73 . 

6. I do not have unique or superior knowledge of information, much
less unique or superior personal knowledge, concerning the allegations
made in the lawsuits arising out of the March 23, 2005 accident at the
BP Products North America’s Texas City Refinery. Information
concerning the accident and the investigation of the accident was
provided to me from employees of both BP p.l.c. and BP Products North
America Inc. I did not participate in the investigation of the March 23,
2005 accident. I therefore have no personal knowledge of facts relevant
to the accident or the allegations made in the lawsuits filed against BP
Products North America Inc. 
7. I have no unique personal knowledge of the Texas City facility or its
operations, including any safety issues or concerns. Information
concerning the Texas City facility or its operations, including any
safety issues or concerns was provided to me from employees of both BP
p.l.c. and BP Products North America Inc., including Michael Hoffman,
Group Vice President for Refining, who reports to me on these issues. 
8. Thus, the only knowledge I have concerning the accident, the
investigation of the accident and the other allegations made against BP
Products North America Inc. is second hand. Certainly, I do not possess
relevant knowledge equal to or greater in quality of quantity than
executives and employees of BP Products North America Inc. or other
executives or employees of BP p.l.c.
9. After the March accident, . . . [t]hat investigation was performed by
a group of highly qualified and knowledgeable individuals . . . . All of
these activities were at the direction of and monitored by persons other
than me, although I have kept myself informed about the progress and
results of the investigation.
See Crown Central, 904 S.W.2d at 126; Texas Genco, 169 S.W.3d at 768; Burlington
Northern, 99 S.W.3d at 326 n.3; El Paso Healthcare Sys., 969 S.W.2d at 73; Enlow,
926 S.W.2d at 643–44.

          Manzoni denied having any unique or superior personal knowledge of the day-to-day operations of the Texas City refinery, of any safety issues or concerns, or of
the allegations at issue in the suit. Having “some knowledge of discoverable
information” does not render an affidavit insufficient. Alcatel, 11 S.W.3d at 179. We
conclude that Manzoni sufficiently denied any knowledge of relevant facts and that
BP provided the trial court with a sufficient affidavit under Crown Central. See id.
at 175; Burlington, 99 S.W.3d at 326.Conclusion

          We hold that the trial court abused its discretion in striking BP’s affidavit. We
therefore conditionally grant BP’s petition for writ of mandamus, direct the trial court
to vacate its June 21, 2006 order striking BP’s affidavit, and direct the trial court to

 
reinstate BP’s motion for protection.


 We are confident that the trial court will
promptly comply, and our writ will issue only if it does not.

 
 
                                                             Elsa Alcala

                                                             Justice

 
Panel consists of Chief Justice Radack and Justices Alcala and Higley.