**In re EL PASO HEALTHCARE SYSTEM, Sun Towers/Vista Hills d/b/a Columbia Medical Center East the State of Texas.**

No. 08–97–00481–CV.

Court of Appeals of Texas, El Paso.

April 9, 1998.

Michael G. McLean, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for relator.

Peter S. Peca, Jr., Mark T. Davis, El Paso, for respondent.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

El Paso Healthcare System, Sun Towers/Vista Hills d/b/a Columbia Medical Center East, Relators (El Paso Healthcare), seek relief from an order entered by the Honorable Peter S. Peca, judge of the 171st District Court of El Paso County (Respondent), denying their motion for a protective order regarding the deposition of the President and Chief Executive Officer of Columbia West Texas Division, Inc., Randall Rolfe. The issue presented is whether Respondent's order improperly required the production of an "apex" witness for an unrestricted deposition in violation of the guidelines of *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex.1995). We conditionally grant the writ of mandamus.

## FACTUAL AND PROCEDURAL SUMMARY

This mandamus proceeding arises out of a nonsubscriber and wrongful termination suit filed on June 12, 1997 by Wayne Mathews against his former employer, El Paso Health-care. Mathews had been employed as the charge nurse for the Intensive and Critical Care Units of Columbia Medical Center East in El Paso. Mathews alleged that El Paso Healthcare's negligence and gross negligence in understaffing these units caused him stress and anxiety which in turn resulted in acute episodes of major depression, listlessness, and apathy. He further alleged that El Paso Healthcare retaliated against him for reporting to his supervisor a violation of the law regarding the proper staffing and care of patients in the Critical Care Units.

On October 10, 1997, Mathews noticed Randall Rolfe, president and chief executive officer of Columbia West Texas Division, Inc., for the first deposition in the case. The notice does not identify the specific areas of inquiry. El Paso Healthcare, alleging that Mathews had noticed the deposition for the sole purpose of harassment without any attempt to obtain discovery through less intrusive methods, filed a motion for protective order pursuant to the guidelines established in *Crown Central Petroleum Corp. v. Garcia.* The motion was supported by Rolfe's affidavit that he had no personal knowledge of each employee's job duties, performance, or termination, of Mathew's job duties, performance, or termination, of the day-to-day administration of any specific unit of a hospital, or of the staffing of the Columbia Medical Center East. He also averred that he has no expertise in the staffing of an ICU/CCU and he was not involved in the day-to-day administrative decisions made regarding this ICU/CCU.

At the October 21 hearing on the motion for protective order, neither party offered evidence in support of their respective positions except that El Paso Healthcare relied on Rolfe's affidavit attached to the motion. Counsel for both parties made certain representations and argued their positions to Respondent. Counsel for El Paso Healthcare stated that the parties were still in the midst of hashing out written discovery and that Mathews had taken no other depositions. El Paso Healthcare argued that Mathews had failed to establish that Rolfe possessed unique or superior personal knowledge of discoverable information as re-

quired by *Crown Central Petroleum Corporation v. Garcia.* Mathews' counsel responded that he believed he could establish through Rolfe that understaffing of Columbia Medical Center East has occurred as the result of a corporate cost-cutting policy. He based this belief upon two events: (1) a vice-president of a Columbia Hospital in Las Vegas purportedly resigned "for moral reasons" because he believed that Columbia was understaffing all of its hospitals; and (2) a Columbia employee stated in a videotape that a corporate official of Columbia Western Division, Inc., Jamie Hopping, had insisted that staffing "be cut to the bone."[1] Counsel for Mathews also maintained that this was not an "apex" deposition because he intended to depose corporate officials above Rolfe. Finally, Mathews argued that the deposition should be permitted since Rolfe would be resigning from his position effective October 31, 1997 and would be moving to California. Based upon these representations, the trial court denied the motion for protective order for the stated reasons that Rolfe lived in El Paso and the deposition would be short if he had no relevant knowledge as claimed by El Paso Healthcare. Two days later, El Paso Healthcare filed a petition for writ of mandamus.

## STANDARD OF REVIEW

Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig.proceeding); *Braden v. Marquez*, 950 S.W.2d 191, 193 (Tex.App.—El Paso 1997, orig. proceeding). Moreover, there must be no other adequate remedy at law. *Id.*

### Clear Abuse of Discretion

A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or guiding principles of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)(orig.proceeding); *Braden*, 950 S.W.2d at 193. With respect to

resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839–40; *Braden*, 950 S.W.2d at 193. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. *Braden*, 950 S.W.2d at 193. A trial court has no "discretion" in determining what the law is or applying the law to the facts. *Braden*, 950 S.W.2d at 193. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840; *Braden*, 950 S.W.2d at 193.

### No Adequate Remedy by Appeal

An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639–40 (Tex.1986)(orig.proceeding); *Braden*, 950 S.W.2d at 193–94. A writ of mandamus is the proper vehicle to attack an order granting discovery. *AMR Corporation v. Enlow*, 926 S.W.2d 640, 642 (Tex.App.—Fort Worth 1996, orig. proceeding).

### APEX DEPOSITIONS

It is undisputed that a party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence. *Crown Central Petroleum Corp.*, 904 S.W.2d at 127. By virtue of Rule 200 of the Rules of Civil Procedure, a party is permitted to take the deposition of "any person." *Id.*; TEX.R.CIV.P. 200. However, the person noticed for deposition has

---

1. Mathews claimed to have a videotape in which the employee made these statements but Respondent stated that he did not have time to watch it. Instead, Respondent asked that Mathews simply tell him what was on the tape. That videotape was not offered into evidence and it has not been made part of the mandamus record.

the right to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." *Crown Central Petroleum Corp.*, 904 S.W.2d at 127, *quoting* Tex. R.Civ.P. 166b(5).

When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. *Crown Central Petroleum Corp.*, 904 S.W.2d at 128. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. *Id.*

Mathews first argues that the trial court properly refused to apply *Crown Central Petroleum Corp.* because Rolfe, as *only* the president and chief executive officer of Columbia West Texas Division, Inc., is not an "apex" witness since he is not at the highest level of the El Paso Healthcare corporate hierarchy. To the extent Mathews urges that only the chief executive officer of the entire El Paso Healthcare System may seek a protective order under *Crown Central Petroleum Corp.*, we disagree. Nothing in *Crown Central Petroleum Corp.* suggests that its rule applies only to the highest level corporate official of a corporation. Instead, the Supreme Court expressly stated that corporate presidents and other high level corporate officials who do not have discoverable personal knowledge may seek a protective order. *Crown Central Petroleum Corp.*, 904 S.W.2d at 128. Generally, the party resisting discovery has the burden to plead and produce evidence supporting his objection to the requested discovery. *State v. Lowry*, 802 S.W.2d 669, 671 (Tex.1991); *Jordan v. Court of Appeals for the Fourth Supreme Judicial*

*District*, 701 S.W.2d 644, 648–49 (Tex.1985). Pursuant to *Crown Central Petroleum Corp.*, the party resisting the deposition satisfies its burden by filing a motion for protective order supported by the affidavit of the corporate president or other high level corporate official denying any knowledge of relevant facts. *See Crown Central Petroleum Corp.* 904 S.W.2d at 128. El Paso Healthcare established by its motion and affidavit that Rolfe is a corporate president who does not participate in the day-to-day administration of units within this particular hospital and who possesses no discoverable personal knowledge. This is sufficient to satisfy El Paso Healthcare's burden under *Crown Central Petroleum Corp.*.

The question remains whether Mathews rebutted El Paso Healthcare's showing that Rolfe is an apex witness. Without any support in the record before us, Mathews asserts that Columbia is the nation's largest hospital chain consisting of more than 300 hospitals nationwide and that there are many corporate officials above Rolfe. The record does not reflect the corporate hierarchy of El Paso Healthcare or the place of Columbia West Texas Division, Inc. and its president within that hierarchy. Other than generally asserting at the hearing that he intended to depose corporate officials above Rolfe, Mathews offered no proof to support his claim that Rolfe is not a high level corporate official. Remarks by an attorney during the course of the hearing on the motion for protective order are not evidence unless the attorney is actually testifying. *See General Elec. Co. v. Salinas*, 861 S.W.2d 20, 24 (Tex.App.—Corpus Christi 1993, orig. proceeding); *Collier Services Corp. v. Salinas*, 812 S.W.2d 372, 377 (Tex. App.—Corpus Christi 1991, orig. proceeding). Because Mathews failed to rebut El Paso Healthcare's showing that Rolfe is a corporate president, we conclude that the guidelines of *Crown Central Petroleum Corp.* apply to El Paso Healthcare's request for a protective order.

In order for the denial of the motion for protective order to be proper, Respondent must have first determined that

Mathews arguably demonstrated that Rolfe has unique or superior personal knowledge of discoverable information. *Crown Central Petroleum Corp.*, 904 S.W.2d at 128. Despite the unrestricted notice of deposition, Mathews attempted at the hearing to limit the scope of Rolfe's discoverable personal knowledge to the issue of whether understaffing had occurred as a result of corporate policy. Counsel for Mathews stated at the hearing that he sought to depose Rolfe in order to discover his knowledge of the alleged corporate policy to cut staffing. Mathews failed to demonstrate that Rolfe has knowledge of such a policy or possesses discoverable personal knowledge relevant to this limited issue. He asserted that Rolfe, in his capacity as corporate president, must have knowledge of any such decision because "[s]taffing is the single most expensive cost of running a hospital." A generalized claim that a corporate president has ultimate responsibility for all corporate decisions or has knowledge of corporate policy is insufficient to establish that the corporate president has unique or superior personal knowledge of discoverable information. *See AMR Corporation*, 926 S.W.2d at 644 (testimony that chairman of the board would have ultimate authority over any policy by virtue of his position is nothing more than simple recognition that highest-ranking corporate officer of any corporation has ultimate responsibility for all corporate decisions and falls far short of the *Crown Central Petroleum Corp.* standard). Further, the facts relied on by Mathews, that is, the resignation of a hospital official in Las Vegas and the statements attributed to the president of Columbia Western Division, Inc., do not arguably show the existence of a corporate-wide policy which resulted in staffing cuts at Columbia Medical Center East for the simple reason that Mathews did not connect those facts to this case. Simply put, the record does not reflect the corporate hierarchy of El Paso Healthcare, or the relationship of the Columbia Hospital in Las Vegas to Columbia Medical Center

East in El Paso, or of Columbia Western Division, Inc. to Columbia West Texas Division, Inc., so that it could be said that a corporate-wide policy exists and that it affects staffing decisions at Columbia Medical Center East. For these reasons, Mathews failed to arguably demonstrate that Rolfe possesses unique or superior discoverable knowledge.

Despite his failure to carry his burden under *Crown Central Petroleum Corp.*, Mathews suggests that Respondent properly denied the protective order for two reasons. First, he argues that Respondent's denial of the motion is justified because Rolfe's impending move from the state would greatly increase the cost of later obtaining his deposition. In making this argument, Mathews assumes that he will at some future point be able to establish his entitlement to depose Rolfe. However, the limited record before us does not support such an assumption.[2] Further, Mathews cites no cases in support of his position that a trial court has the authority to subject a party to impermissible discovery as a cost-cutting measure, and we are aware of none. Because such a decision punishes El Paso Healthcare for carrying its burden of proof under *Crown Central Petroleum Corp.* and rewards Mathews for failing to do so, we decline to adopt this rule.

Second, Mathews asserts that *Crown Central Petroleum Corp.* is no longer applicable because as of October 31, 1997, Rolfe is no longer a corporate official, and therefore, this mandamus proceeding is moot. We disagree. All actions taken in this case, including the filing of the petition for writ of mandamus, occurred prior to Rolfe's resignation on October 31. Thus, Respondent's actions must be measured by the law applicable to the decision at the time it was made. Further, simply because Rolfe no longer holds the corporate office does not suddenly endow him with discoverable per-

2. In order to later depose Rolfe, Mathews must first persuade Respondent to modify or vacate the protective order. This will require that he first make a good faith effort to obtain the discovery through less intrusive methods, and then establish that there is a reasonable indication

that Rolfe's deposition is calculated to lead to the discovery of admissible evidence, and that the less intrusive methods of discovery are unsatisfactory, insufficient, or inadequate. *Crown Central Petroleum Corp.*, 904 S.W.2d at 128.

sonal knowledge nor does it strip him retroactively of the protection he should have been given in the first place. We hold that Rolfe's resignation does not render this proceeding moot.

Because El Paso Healthcare provided the trial court with a proper affidavit under *Crown Central Petroleum Corp.* and Mathews failed to carry his burden, Respondent clearly abused his discretion in denying the motion for a protective order. *Crown Central Petroleum Corp.*, 904 S.W.2d at 128; *Enlow,* 926 S.W.2d at 644; *Frozen Food Express Industries, Inc. v. Goodwin,* 921 S.W.2d 547, 549–50 (Tex.App.—Beaumont 1996, orig. proceeding). Further, no adequate remedy by appeal exists because an appellate court could not cure the trial court's error in ordering the apex deposition. *Walker,* 827 S.W.2d at 843; *Enlow,* 926 S.W.2d at 644; *Frozen Food,* 921 S.W.2d at 550.

## RELIEF GRANTED

This brings us to the matter of the relief to be granted. El Paso Healthcare asks that Respondent's order allowing the unrestricted deposition of Rolfe be vacated. On the other hand, Mathews requests that we deny the petition for mandamus without prejudice and allow the trial court to reconsider its ruling in light of the videotape Respondent refused to consider at the hearing. Mathews did not object to Respondent's refusal to consider the videotape nor did he offer it into evidence or make a bill of exception; instead, he complied with Respondent's request to merely summarize the evidence. Consequently, he has not preserved any complaint he might have about Respondent's refusal to consider it. *See* TEX.R.APP.P. 33.1. As we have already noted, the videotape has not been made a part of the record in this original proceeding, and therefore, we have no basis for requiring Respondent to reconsider his decision in light of evidence not offered and not in the record before us. El Paso Healthcare established its entitlement to a protective order in the court below and to manda-

mus relief in this Court. Accordingly, we conditionally grant the writ of mandamus which will issue only if Respondent fails to vacate his October 21, 1997 order denying the motion for protective order.

LARSEN, Justice, dissenting.

I respectfully dissent. Under the facts presented here, I see no abuse of discretion. I believe the trial court could have found the deposition warranted on either of two independent grounds: that Randall Rolfe was not an apex witness, or that it was probable he had unique, superior knowledge of discoverable information. Moreover, I believe the trial court could properly weigh as a factor the imminent departure of the witness from this jurisdiction, as well as the convenience to all parties in deposing him locally. I would deny mandamus.

The allegations in plaintiff Wayne Mathews' suit are twofold: (1) that he suffered a work-related depressive episode because understaffing of the critical care unit forced him to work beyond capacity for extended periods without adequate staff support; and (2) that he was terminated from his employment for reporting a violation of the law regarding staffing and patient care in the critical care unit. Mathews noticed Randall Rolfe's deposition, with subpoena duces tecum.[3] Rolfe's deposition was the first noticed in the suit. In response, Mr. Rolfe filed his motion for protective order, urging that the deposition was being sought for the sole purpose of harassment without any attempt by plaintiff to obtain discovery through less intrusive methods, and that he was entitled to protection under *Crown Central Petroleum Corp. v. Garcia.* Rolfe's affidavit in support of protective order states:

> I am President and Chief Executive Officer of Columbia West Texas Division, Inc. In this capacity I do not have personal knowledge of each employee's job duties, performance or termination, nor do I have personal knowledge regarding the day-to-

---

**3.** The subpoena requested, among other things, "[a]ny written policies or directives regarding staffing policy which you received from 1992 to the present from any person who did not work at

Columbia Hospital at 10301 Gateway West in El Paso County, Texas but was employed or otherwise associated with any parent company of the defendant."

day administration of any specific unit of a hospital.

I have no personal knowledge of Wayne Mathews, his job duties, job performance or termination. I have no personal knowledge of the staffing of the Columbia Medical Center—East ICU/CCU. I was not involved in the day-to-day administrative decisions made regarding the ICU/CCU. I have no expertise in the staffing of an ICU/CCU.

The affidavit does *not* say that Rolfe was ignorant of corporate policy regarding staffing cuts, nor of directives from Columbia Medical Center's parent company regarding such policy. This is a central issue in plaintiff's lawsuit, and Rolfe's failure to deny such knowledge justifies the trial court's ruling.

At the hearing on the motion for protective order, plaintiff's counsel stated two reasons for needing Rolfe's testimony. First, that his purpose in taking Rolfe's deposition was to explore the theory that a decision higher in the corporate structure had caused the staff cuts at issue here. Staffing is the most expensive part of running a hospital, counsel argued, Columbia was trying to increase profits, and he had reason to believe that directives to cut staff came from someone well above Rolfe's rank. In support of this theory, plaintiff proffered the videotape of a Columbia administrator from Las Vegas, Nevada. This person was on record as having resigned precisely because of staffing cuts similar to those alleged in plaintiff's lawsuit here. I conclude that the trial court was justified in following *Crown Central Petroleum's* directive "the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information" and determining, presumptively, that plaintiff had

made the required showing. *Crown Central Petroleum Corp.,* 904 S.W.2d at 128. I see no abuse of discretion.

The trial court specifically accepted the proffers of counsel in lieu of evidence at the hearing.[4] I disagree with the majority's assertion that the evidence was insufficient to rebut the assertion that Rolfe was an apex employee. The majority is correct in noting that the record contains little to enlighten us on the corporate structure of Columbia West Texas Division, Inc., Columbia Medical Center East, or any parent company.[5] I disagree with the majority, however, in its conclusion that merely stating one is the CEO of a company and that one has no personal knowledge of the individual plaintiff's plight is sufficient to trigger apex protection. This is not a situation where the deposition sought is of the head of a multi-national corporation. It stands in contrast to other apex cases. *See, e.g., AMR Corporation,* 926 S.W.2d at 642 (mandamus prohibiting apex deposition of president, CEO and chair of the board of AMR Corp. and American Airlines). If the majority's standard for triggering apex protection is extended only slightly, every owner of a closely-held corporation, with an carefully drawn affidavit, may invoke apex protection whether deserved or not. This is contrary to the general rule that courts must liberally construe discovery questions in favor of disclosure, to allow litigants to obtain the fullest knowledge of the facts and issues before trial. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990)(orig.proceeding); *Kessell v. Bridewell,* 872 S.W.2d 837, 842 (Tex.App.—Waco 1994, no writ).

Moreover, I see no reason why the trial court could not take into consideration that Rolfe lived in El Paso, would be moving out of the jurisdiction shortly, would reasonably be expected to have information about staffing cuts ordered by a higher authority, and

4. The trial court declined to watch the proffered video, instead asking counsel to summarize its contents, which he did. The majority implies that the trial court may not rely on such time-saving measures in discovery hearings without risking mandamus. ("Remarks by an attorney during the course of the hearing on the motion for protective order are not evidence unless the attorney is actually testifying.") I would not so constrain the trial court. Counsel's statements in open court, recorded for review, ought to have some value, particularly when they are an expla-

nation of the legal and factual theories upon which the case is based. I do not read *Crown Petroleum* as requiring a full-blown evidentiary hearing, and I disagree with the majority's expansion of the burden to be placed on the party seeking discovery.

5. At oral argument, counsel for Columbia could not shed much light on the corporate structure, either.

order the deposition to proceed for those reasons. Nothing in this record smacks of harassment; rather it appears that good reasons existed for the plaintiff's attempt to depose Rolfe early in the proceedings, and that the trial court properly considered those reasons in denying the motion to quash. Although the two questions before the trial court were whether Rolfe had unique or superior knowledge of discoverable information and whether he was an apex witness, that is not the question before this court. This court decides only if the trial court abused its discretion, that is, whether the trial court could reasonably have reached only one decision, and instead reached a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839. Relators have not met that burden here.

In sum, I believe *Crown Central* is intended as a shield to protect persons far removed from a lawsuit's subject matter from proceedings intended to harass a defendant corporation and its high ranking officers. I do not believe it was intended as a sword to prevent relevant, discoverable information from coming to light in an expeditious, convenient manner. I perceive nothing in the trial court's order that is contrary to the purpose of *Crown Petroleum*, and I certainly see nothing arbitrary or unreasonable about it.

For these reasons, I dissent.