COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





IN RE: ARVIN WEST, SHERIFF OF
HUDSPETH COUNTY,


 Relator.


§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00254-CV



AN ORIGINAL PROCEEDING IN


 MANDAMUS 


 


O P I N I O N


 This is a petition for writ of mandamus to vacate the order quashing the Notice of Deposition
of CPA Henderson. We deny Relator's petition for writ of mandamus.

I. BACKGROUND


 This petition for writ of mandamus arises from a civil rights suit filed by Pascual Olibas
(Real Party) against the Sheriff of Hudspeth County, Texas, Arvin West (Relator). The Real Party
alleged that he was being prevented from operating his business, Freedom Bail Bonds, and he
requested injunctive relief to prevent harassment and civil rights violations as alleged in his original
pleadings. In response, the Relator filed a counterclaim alleging that Real Party was not solvent and
could not stand behind all bonds or judgments nisi. Under Texas law, a bondsman is required to file
a financial statement with the sheriffs of counties where he operates. Tex.Code Crim.Proc.Ann.
art. 17.141 (Vernon Supp. 2008). As required, Real Party filed financial statements with Relator. 
After a temporary restraining order was entered against Relator, Relator served a Notice of
Deposition on D. Gene Henderson, C.P.A. (CPA Henderson) and requested each and every
document that CPA Henderson used and reviewed to create Pascual Olibas's financial statement for
the years 2006, 2007, and 2008.

 Real Party filed a Motion to Quash and for Protective Order claiming that the discovery was 
over broad, lacked definition, was not reasonably limited in scope or time, called for privileged
information, and that the information being sought was obtainable from other sources. Additionally,
Real Party objected on the grounds that the request was unreasonably frivolous, oppressive, or
harassing; that it was an invasion of personal, constitutional, or property rights; and that the
discovery request asked for information that was not relevant and not reasonably calculated to lead
to the discovery of admissible evidence.

 Three hearings were held on the Protective Order and Motion to Quash. At the conclusion
of all three hearings, the Honorable Kathleen H. Olivares (Respondent) of the 205th Judicial District
Court of Hudspeth County, entered oral orders quashing the Relator's Notice of Deposition because
the Relator had failed to show that the information being sought was relevant and that it could not
be obtained from another source.

II. DISCUSSION

 Relator seeks a writ of mandamus to vacate the oral order quashing the Notice of Deposition
of CPA Henderson and asserts that the court abused its discretion by prohibiting Relator from
deposing Real Party's accountant without first exhausting all other available methods to investigate
Real Party's financial condition.

 A. Mandamus

 Mandamus relief is appropriate when a trial court abuses its discretion and there is no
adequate remedy by appeal. See In re Kuntz, 124 S.W.3d 179, 180 (Tex. 2003) (orig. proceeding);
In re Ford Motor Co., 988 S.W.2d 714, 718 (Tex. 1998) (orig. proceeding); Walker v. Packer, 827
S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "An appellate remedy is 'adequate' when any
benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the
detriments, appellate courts must consider whether the appellate remedy is adequate." In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).

 A clear abuse of discretion, warranting correction by mandamus, occurs when a court issues
a decision which is without a legal basis, or support in guiding principles of law. See Johnson v.
Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). With respect to the
resolution of fact issues or matters committed to the trial court's discretion, a reviewing court may
not substitute its judgment for that of the trial court. Walker, 827 S.W.2d at 839-40. A trial court's
determination of a factual issue is entitled to deference in a mandamus proceeding and should not
be set aside unless it is clear from the record that only one decision could have been reached. In re
Kuntz, 124 S.W.3d at 181; Walker, 827 S.W.2d at 839-40. Even if the reviewing court would have
decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be
arbitrary and unreasonable. Walker, 827 S.W.2d at 840. In contrast, a trial court has no discretion
in determining what the law is or in applying the law to the facts. In re Kuntz, 124 S.W.3d at 181;
Braden v. Marquez, 950 S.W.2d 191, 193 (Tex.App.-El Paso 1997, orig. proceeding). Therefore,
a failure by the trial court to analyze or apply the law correctly, as when a discovery order conflicts
with the Texas Rules of Civil Procedure, constitutes an abuse of discretion. In re Kuntz, 124 S.W.3d
at 181; In re El Paso Healthcare Sys., 969 S.W.2d 68, 72 (Tex.App.-El Paso 1998, orig.
proceeding). A writ of mandamus is the proper vehicle to attack an order denying discovery. In re
El Paso Healthcare Sys., 969 S.W.2d at 72. So while the trial judge has great latitude in controlling
discovery, it can abuse its discretion if it acts unreasonably and arbitrarily. In re Colonial Pipeline
Co., 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding).

 B. Abuse of Discretion

 The relator bears the heavy burden of establishing that the trial court has abused its
discretion. In re CSX Corp., 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). In this situation
we find that the Relator has failed to show that the trial court abused its discretion.

 Texas Rule of Civil Procedure 192.3 is entitled "Scope of Discovery" and provides, "In
general, a party may obtain discovery regarding any matter that is not privileged and is relevant to
the subject matter of the pending action . . . [and which] appears reasonably calculated to lead to the
discovery of admissible evidence." See Tex.R.Civ.P. 192.3(a); Crown Central Petroleum Corp. v.
Garcia, 904 S.W.2d 125, 127 (Tex. 1995) (orig. proceeding). Parties are generally permitted to take
the deposition of, "any person." Crown Central Petroleum Corp., 904 S.W.2d at 127.

 In discovery situations, the trial court is granted latitude in limiting or tailoring discovery. 
Tex.R.Civ.P. 192.4. Generally, a trial court should limit discovery methods to those which are more
convenient, less burdensome, and less expensive, or when the burden or expense of the proposed
discovery outweighs its likely benefit. In re Alford Chevrolet-Geo, 997 S.W.2d 173 (Tex. 1999)
(orig. proceeding); Tex.R.Civ.P. 192.4. Discovery requests themselves must be reasonably tailored
to matters relevant to the case at issue. In re Xeller, 6 S.W.3d 618, 626 (Tex.App.-Houston [14th
Dist.] 1999, orig. proceeding). Consequently, the trial court has broad discretion to limit discovery
requests by time, place, and subject matter. See Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815
(Tex. 1995) (orig. proceeding).

 The trial judge expressed three primary concerns in regard to the Relator's Notice of
Deposition. First, the trial court believed that the information Relator was seeking from CPA
Henderson could have been obtained through interrogatories or other means. Second, the trial court
believed that the oral deposition of CPA Henderson would have been overbroad, because allowing
the deposition, without any restrictions, would have been beyond the scope of the injunctive relief
being sought. And third, the trial court expressed concerns that the information sought through the
deposition was beyond the limits of the case; essentially, that the information being sought was not
relevant.

 In determining whether the trial court abused its discretion we analyze two areas. First, did
the trial court abuse its discretion in attempting to tailor and limit the scope of the deposition. And
second, did the trial court abuse its discretion in requiring that the Relator obtain the information
sought from a more convenient source and less burdensome method.

 1. Scope of Deposition

 At the hearing on the Motion for Protective Order (First Hearing), the trial court stated that
the deposition would be allowed if the questioning was limited to several relevant questions. 
Specifically, the trial court believed that the questioning should be limited to a handful of questions
related to the documents presented to CPA Henderson for his review and used in preparation of the
financial statement.

 The evidence and arguments presented to the court were as follows: The Relator's attorney
maintained that he was entitled to depose CPA Henderson because he wanted to show that Real
Party's financial statement was nothing more than what the Real Party says he owns and what his
assets are worth, implying that the financial statement is false or incomplete; that he needed to
determine why the accountant indicated in the compiled financial statement that he had departed
from generally-accepted accounting principles in preparation of the report; that he wanted to show
through the deposition of CPA Henderson that Real Party was not capable of making good on all his
present commitments; and that it was necessary to determine whether there was information
available about Real Party's liabilities which had not been provided by the Real Party to CPA
Henderson.

 Real Party's testimony was that he and CPA Henderson had an extensive relationship and
that over thirteen years, CPA Henderson had become privy to confidential and privileged business
information such as information about how he operates his company and information regarding his
personal finances outside of his bail bond business that he considers personal; that among the
information he provided CPA Henderson were clients' deeds of trust, warranty deeds that would be
returned after obligations were fulfilled, titles to cars, social security numbers, and driver's license
numbers; that he relied on the appraisal values established by taxing entities for setting the value of
his assets; that he had not provided CPA Henderson with information on liabilities relating to bonds;
and that information on liabilities was not included in the financial statement. On the 2006 financial
statement at issue, CPA Henderson clearly indicated that it was not audited or reviewed, but that it
was only a compilation of information provided by Real Party and that he was aware of a departure
from generally-accepted accounting principles because certain information was omitted in the
preparation of the statement.

 Throughout the hearing, the trial judge indicated that a narrowly-tailored deposition would
be allowed; however, the Relator maintained that he was entitled to depose CPA Henderson without
limitations.

 In light of the evidence presented, we find that it was reasonable for the trial judge to require
that the deposition of CPA Henderson be tailored so as to protect Real Party's privileged matters and
to limit the deposition to matters relevant to the case. We also find that in light of Relator's refusal
to agree to a limited scope of discovery, it was reasonable for the judge to grant the Motion for
Protective Order and to Quash the Notice of Deposition. See Tex.R.Civ.P. 192.6(b).

 2. Other Sources

 The trial court held a second and third hearing to allow Relator the opportunity to
demonstrate that the deposition would produce relevant information and that the information sought
could not be obtained from other sources.

 At the Hearing on Motion to Reconsider (Second Hearing), the Real Party again testified that
confidential and proprietary information had been conveyed to CPA Henderson that he did not want
disclosed and that among the information not provided to CPA Henderson and leading to the
departure in standard accounting principles, were pass-through or contingent liabilities on
outstanding bonds in 15 counties. The Real Party argued that if the only reason to depose the
accountant was to determine the number of outstanding bonds, that the information could be readily
obtained from other sources.

 Relator, who was not present at the first hearing, testified at the second hearing that he is
required by law to maintain a bail bonds book that shows all the bonds Real Party writes in Hudspeth
County, but that he had not bothered to look through his own records for that information; that he
had not called other counties in which the Real Party operates to determine what other outstanding
liability existed; and that he had not searched the clerk's records to determine how many judgments
nisi had been issued against the Real Party. The evidence also showed that no other bail bondsmen
in Hudspeth County were required to list contingent or pass-through liabilities on their respective
financial statements. The Relator persisted in arguing that the accountant's deposition was needed
to determine the validity of the Real Party's financial statement. The trial court found that the
Relator failed to show that the information sought from CPA Henderson was relevant to the matter
of Real Party's solvency and that Relator failed to prove that there was no other method more
convenient and less burdensome of obtaining the information sought. At the conclusion of the
second and third hearings, the trial court denied the Motions to Reconsider and granted the Motion
for Protective Order and Motion to Quash the Notice of Deposition.

 Based on the record, we fail to see how the accountant's testimony could be relevant to the
solvency of Real Party's business or to the validity of the financial statement when the accountant
indicated that the financial statement was not audited for accuracy and that he had not been provided
information on contingent liabilities. Further, given that CPA Henderson has knowledge of
confidential business and personal information, it was reasonable for the trial court to prevent the
disclosure of the Real Party's privileged information by not allowing an unlimited and exhaustive
deposition of CPA Henderson and to require the Relator to first exhaust other methods of obtaining
the information by way of more specific requests such as written discovery or other means readily
available to the Relator.

 The record shows that Relator has at all times had the ability to look in his own records and
the records of other counties, if he desired, to determine how many outstanding bonds exist and that
he did not avail himself of that information. The Relator was provided the opportunity to explain
on three separate occasions how the deposition of CPA Henderson would produce relevant
information and he failed to do so. We find that the trial court did not abuse its discretion in
requiring Relator to obtain the requested information by other methods less burdensome or from a
more convenient source. See Tex.R.Civ.P. 192.4; In re Xeller, 6 S.W.3d at 626.

III. CONCLUSION

 Because we conclude that the Relator has failed to show that the trial court abused its
discretion in attempting to tailor and limit the scope of discovery, we deny the Petition for Writ of
Mandamus. Accordingly, it is unnecessary to determine whether an adequate remedy on appeal
exists.


 GUADALUPE RIVERA, Justice


April 9, 2009


Before McClure, J., Rivera, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment