**Opinion issued November 24, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-20-00439-CV

_____

### IN RE BAYLOR UNIVERSITY, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### MEMORANDUM OPINION

In this original proceeding, Baylor University seeks mandamus relief from the trial court's order that denied its motion for protection and ordered the deposition of Baylor's president, Dr. Linda A. Livingstone.[1] In its sole issue, Baylor contends that the trial court abused its discretion in ordering the deposition.

---

[1] The underlying case is *Annie Andrews v. Baylor University*, cause number 2019-17683, pending in the 234th District Court of Harris County, the Honorable Lauren Reeder presiding.

We conditionally grant mandamus relief.

## Background

In March 2019, Annie Andrews,[2] the real party in interest, filed suit against Baylor and four other defendants. In her live pleading, the first amended petition, Andrews alleged that in November 2017, multiple Baylor football players had sexually assaulted her during a party at a campus residence hall. Andrews asserted various causes of action against Baylor, including negligent supervision, negligence-dangerous environment, premises liability, negligence-negligent affirmative course of action and breach of duty of a special relationship. Baylor answered, generally denied the allegations, and asserted a number of affirmative defenses. In asserting its affirmative defenses, Baylor argued that it had no duty to protect against the criminal acts of third parties and no duty to protect against a dangerous condition inside Andrews's leased space.

Andrews noticed Dr. Livingstone's deposition for June 17, 2020, which Baylor quashed. Andrews then filed a motion to compel, stating that "President Livingstone is a fact witness in this case. In the wake of the rape scandal that had embroiled Baylor's football program, President Livingstone made representations to prospective Baylor students, including Annie Andrews and her parents, about

---

[2] Annie Andrews is a pseudonym to maintain confidentiality. *See* TEX. R. APP. P. 9.9.

the safety of Baylor's campus several months before Annie was sexually assaulted in her Baylor-owned and Baylor-assigned apartment." Andrews continued, "As demonstrated by her own statements, Dr. Livingstone is clearly a person with unique personal knowledge relevant to the claims in this lawsuit. Dr. Livingstone, for example, has personal knowledge regarding the safety of Baylor's campus with respect to the risk of sexual assault to prospective female students and 'the many changes' that Baylor has allegedly made 'to ensure a safer and healthier campus.' Baylor has no good reason to object to producing Ms. Livingstone for deposition, and has not articulated one."

On May 11, 2020, Baylor filed a motion for protection and supplemental response to Andrews's motion to compel and attached Dr. Livingstone's affidavit. Baylor argued that Dr. Livingstone is an apex official who cannot be deposed merely on allegations that she is a "fact witness." Baylor maintained that Andrews could not meet her burden to show that Dr. Livingstone has unique or superior personal knowledge.

Dr. Livingstone's affidavit stated:

3.     Performance of my duties and responsibilities requires that I oversee many general areas of University affairs, business, and functions, including Academic Affairs; Advancement; Human Resources; Marketing & Communications; Operations, Finance & Administration; Student Life; and Athletics. Each of these general areas is composed of additional sub-areas over which I also have general oversight. The area of Student Life, for example, is composed of Student Health &

Wellness/Counseling Services, Student Development, Student Learning & Engagement, and Spiritual Life—and Athletics is composed of Athletic Operations, Athletic Development, Student-Athlete Health & Wellness, Internal Affairs, Financial Services, Compliance, Branding & Engagement, Student Athlete-Success, Personnel & Administration, Business Operations, and several other sub-areas. As President, I generally do not have any unique personal knowledge of the day-to-day operations of any of these areas or sub-areas, nor do I generally have any personal knowledge of the day-to-day operations of any of these areas or sub-areas that would be superior to that available from other sources. Baylor employs officers, directors, staff, and other employees to whom I delegate such day-to-day operations—and I perform my duties and responsibilities based on reports and information provided . . . to me by these officers, directors, staff, and other employees.

4. I understand that the plaintiff in the above-captioned lawsuit has asked to take my deposition in connection with an incident that occurred at Baylor's University Parks Apartments in November 2017. Further, I have reviewed Plaintiff's First Amended Petition and Jury Demand . . . for the purpose of making this affidavit—and understand that this petition contains Plaintiff's allegations relating to that incident.

5. I have no first-hand, personal knowledge of the incident described in the petition, nor do I have any first-hand personal knowledge of any conduct, actions, or events that occurred at University Parks on the night of the incident, including without limitation the alleged "loud party," drinking, intoxication, incapacitation, rape, and sexual exploitation made the basis of the plaintiff's allegations.

6. Additionally, while I may have knowledge of some facts that relate to this incident and the plaintiff's allegations by reason of my position as Baylor's President, *I do not have any unique personal knowledge related to the incident or allegations, nor do I have any personal knowledge related to the incident or*

4

*allegations that would be superior to that available from other sources*.

a.    I have no first-hand, personal knowledge of the day-to-day management or operation of University Parks, including without limitation the supervision of tenants and inspections of their rooms; the enforcement of any policies and procedures related to alcohol, sexual activity, and curfew; and the implementation of any safety and security policies and procedures. While I have general knowledge of Baylor's practices and policies regarding the management and operation of residence halls, my knowledge of these matters is neither unique nor superior to the knowledge possessed by those to whom I have delegated such responsibilities and on whom I rely to keep me informed on these matters.

b.    I have no first-hand, personal knowledge of the selection, hiring, training or supervision of the University Parks staff and its community leaders. While I have general knowledge of Baylor's practices and policies regarding the selection, hiring, training and supervision of residence hall staff, my knowledge of these matters is neither unique nor superior to the knowledge possessed by those to whom I have delegated such responsibilities and on whom I rely to keep me informed on these matters.

c.    I have no first-hand, personal knowledge of the physical security in place at University Parks. While I have general knowledge of Baylor's practices and policies regarding the physical security in place at university residence halls, my knowledge of these matters is neither unique nor superior to the knowledge possessed by those to whom I have delegated such responsibilities and on whom I rely to keep me informed of these matters.

d.    I have no first-hand, personal knowledge of any process by which the plaintiff or any other student, athlete or otherwise, was assigned to or selected University Parks

5

for housing. While I have general knowledge of Baylor's practices and policies regarding housing, my knowledge of these matters is neither unique nor superior to the knowledge possessed by those to whom I have delegated such responsibilities and on whom I rely to keep me informed on these matters.

e. I have no first-hand, personal knowledge of any process by which the plaintiff or any other student, athlete or otherwise, was recruited by or to any Baylor athletic program. While I have general knowledge of Baylor's practices and policies regarding the recruitment of student athletes, my knowledge of these matters is neither unique nor superior to the knowledge possessed by those to whom I have delegated such responsibilities and on whom I rely to keep me informed on these matters.

f. I did not personally participate in, and have no first-hand, personal knowledge of the Title IX investigation, or any other investigation, of the incident made the basis of the plaintiff's allegations. Again, while I have general knowledge of Baylor's Title IX policies, my knowledge of these matters is neither unique nor superior to the knowledge possessed by those to whom I have delegated such responsibilities and on whom I rely to keep me informed on these matters.

7. I also understand that the plaintiff has specifically expressed an intent to take my deposition on the topic of the following statement that I made after being hired, but shortly before assuming my position as Baylor's President:

I would also acknowledge that mistakes have been made that were not addressed appropriately, particularly with regard to sexual violence on campus. The lessons learned from those mistakes and the many changes made to ensure a safer and healthier campus for all of our students have resulted in Baylor being a better place now then we were two, three, and certainly five years ago.

> Again, while I have knowledge of some facts relating to this statement by reason of my position as Baylor's President, I do not have any unique or superior knowledge related to the facts underlying this statement. More specifically, as incoming President, this statement was made on the basis of knowledge and information provided to me by other sources, not on the basis of any first-hand personal knowledge.

On May 15, 2020, Andrews responded to Baylor's motion for protection, arguing that Dr. Livingstone has "unique knowledge of at least two specific elements of Annie's claims: that Baylor knew its campus was unsafe due to a sexual assault problem on campus and that Baylor failed to adequately warn Annie about that problem." Andrews further stated that Dr. Livingstone's "statements directly related to elements of [her] dangerous condition cause of action." In specifically arguing that Dr. Livingstone has unique and superior knowledge of discoverable information, Andrews argued that "While Dr. Livingstone may not know, for example, the tragic details of Annie's sexual assault, Dr. Livingston clearly has unique and superior personal knowledge regarding ***her own statements and representations*** to students and their parents about sexual violence at Baylor, including, for example, the reasons she made her statements, the circumstances in which they were made, what she meant by the words she used, whether her statements are authentic, what information she relied upon in making them, the sources of her information, etc." Andrews further argued, "In fact, Dr. Livingstone may be the *only* person who can give competent testimony on many of these

7

matters." Andrews then explained how she had already attempted to question a Baylor police officer who was in charge of sexual-assault investigations on campus about the "meaning of one of Dr. Livingstone's statements, and the witness "refused to speculate as to what Dr. Livingstone meant."

Baylor replied to Andrews's response, arguing that Andrews had not explained how Dr. Livingstone's general comments on safety and sexual violence establish that she has any unique or superior personal knowledge concerning what Baylor knew about sexual assaults on its campus, or the adequacy or inadequacy of any warnings given to Andrews. Baylor asserted that Dr. Livingstone's statements themselves demonstrate that she did not have unique or superior knowledge because she stated that she was beginning her responsibilities at Baylor and she expressly addressed the work done by others.

At the hearing on the motion for protection, Baylor pointed out that Dr. Livingstone had just started her tenure at the time she made the statements and that everything Dr. Livingstone knew at the time would have been from information provided by others, either through reports or through interviews and discussions. Baylor framed the issue as "what institutional knowledge did Baylor have as to the truth or falsity of those statements? What information did Baylor have as to the basis of those statements?" Baylor stated, "All of these matters of institutional

knowledge that someone other than President Livingstone would have better knowledge of." Baylor further argued,

> It's sort of an axiomatic thing, that only an individual will have the unique subjective knowledge of what their own thoughts were at any given time or moment. But that is not what . . . *Crown Central* requires. And in fact if that were the standard, Your Honor, every apex deposition could be allowed. Because we could always state that the apex official is the only person who knows what's going on in their own mind at the time of any sort of communication or action.

Andrews argued that "[Dr. Livingstone] personally injected herself into these facts by sending a direct e-mail message, two of them, to Annie Andrews and to—their mother also was a recipient, as I understand it." Andrews admitted that she has not alleged a negligent misrepresentation case but that she still had time to amend pleadings to make those allegations.

Baylor then argued, "What the plaintiffs have basically conceded she does not have is unique or superior knowledge." "I understand they have created an argument. But creating an argument on an apex issue, Your Honor, is not enough."

On May 19, 2020, the trial court denied Baylor's motion for protection and ordered Baylor to present Dr. Livingstone for deposition. Baylor then sought mandamus relief on June 12, 2020, arguing that the trial court abused its discretion in denying its motion for protection and ordering the deposition of Dr. Livingstone.

9

Baylor also sought temporary relief to stay Dr. Livingstone's deposition, which we granted on June 23, 2020.

**Analysis**

*A.*     *Standard of Review and Applicable Law*

Generally, to be entitled to mandamus relief, the relator must demonstrate that the trial court abused its discretion and that it has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839. With respect to the resolution of factual issues, the reviewing court may not substitute its judgment for that of the trial court, and the relator must establish that the trial court could reasonably have reached only one decision. *Id*. at 839–40. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id*. at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *In re Allstate Cnty. Mut. Ins. Co*., 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding).

A party may properly seek mandamus relief to determine whether the trial court correctly ordered an apex deposition. *See In re Alcatel USA*, 11 S.W.3d 173,

175 (Tex. 2000) (orig. proceeding); *In re Miscavige*, 436 S.W.3d 430, 435 (Tex. App.—Austin 2014, orig. proceeding) ("Mandamus relief is appropriate when a trial court allows an apex deposition to go forward in violation of the standard governing such discovery.").

A party to a lawsuit is entitled to discovery "that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence." *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 127 (Tex. 1995) (quoting *Monsanto Co. v. May*, 889 S.W.2d 274, 276 (Tex. 1994)). Texas Rule of Civil Procedure 199.1 allows a party to take the oral deposition of "any person." TEX. R. CIV. P. 199.1(a); *Crown Cent.*, 904 S.W.2d at 127. However, the person noticed for deposition has the right to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." *Crown Cent.*, 904 S.W.2d at 127; *see also* TEX. R. CIV. P. 192.6(b) (allowing trial court to grant protective order in favor of person from whom discovery is sought).

"An apex deposition is the deposition of a corporate officer at the apex of the corporate hierarchy." *AMR Corp. v. Enlow*, 926 S.W.2d 640, 642 (Tex. App.—Fort Worth 1996, orig. proceeding). A corporate official, or the corporate entity on the official's behalf, invokes the protection of the apex deposition doctrine by filing a motion for protection accompanied by the affidavit of the

11

official "denying any knowledge of relevant facts." *Crown Cent.*, 904 S.W.2d at 128. This Court has rejected a "mechanical application of *Crown Central* in determining the sufficiency of an affidavit to invoke the apex doctrine." *In re TMX Fin. of Tex. Inc.*, 472 S.W.3d 864, 875 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding). In determining the sufficiency of a corporate official's affidavit, the question is whether the official "sufficiently denied knowledge of any relevant facts regarding" the subject matter of the litigation. *See In re Tex. Genco, LP*, 169 S.W.3d 764, 768 (Tex. App.—Waco 2005, orig. proceeding); *In re Burlington N. & Santa Fe Ry. Co.*, 99 S.W.3d 323, 326 (Tex. App.—Fort Worth 2003, orig. proceeding) ("BNSF properly initiated the apex guideline proceedings set forth in *Crown Central* by moving for protection and filing Rose's affidavit denying any knowledge of relevant facts."); *In re El Paso Healthcare Sys.*, 969 S.W.2d 68, 73 (Tex. App.—El Paso 1998, orig. proceeding) ("El Paso Healthcare established by its motion and affidavit that Rolfe is a corporate president who does not participate in the day-to-day administration of units within this particular hospital and who possesses no discoverable personal knowledge. This is sufficient to satisfy El Paso Healthcare's burden under *Crown Central Petroleum Corp*.").

Once the corporate official moves for protection and files a sufficient affidavit, the burden shifts to the party seeking the apex deposition to demonstrate that the official has unique or superior personal knowledge of discoverable

12

information.  *See In re Burlington*, 99 S.W.3d at 326.  "The trial court evaluates the motion first by deciding if the party seeking the deposition has 'arguably shown that the official has any unique or superior personal knowledge of discoverable information."  *In re Alcatel*, 11 S.W.3d at 175–76.  The Texas Supreme Court has explained that, for character of knowledge to be unique or superior, "there must be some showing beyond mere relevance, such as evidence that a high-level executive is the only person with personal knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources."  *Id.* "If the party seeking the deposition has 'arguably shown that the official has any unique or superior personal knowledge of discoverable information,' the trial court should deny the motion for protection and the party seeking discovery should be entitled to take the apex depositions."  *Id.* at 176 (quoting *Crown Cent.*, 904 S.W.2d at 128).

If the party seeking the deposition cannot show that the corporate official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protection and require the party seeking the deposition to "attempt to obtain the discovery through less intrusive methods."  *Crown Cent.*, 904 S.W.2d at 128; *see In re Alcatel*, 11 S.W.3d at 176.  "Less intrusive methods" depend on the circumstances of the case, but can include

depositions of lower-level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. *Crown Cent.*, 904 S.W.2d at 128.

Merely having some knowledge of the subject matter of a dispute is not enough to compel an apex deposition. *See In re Alcatel USA*, 11 S.W.3d at 179 (stating that *Crown Central* is "not satisfied by merely showing that a high-level executive has some knowledge of discoverable information"). As the Texas Supreme Court has held, "Allowing apex depositions merely because a high-level corporate official possesses apex-level knowledge would eviscerate the very guidelines established in *Crown Central*." *Id*. at 177.

The apex deposition doctrine "does not provide automatic protection to all high-ranking corporate officers whose depositions have been noticed." *In re Titus Cnty.*, 412 S.W.3d 28, 35 (Tex. App.—Texarkana 2013, orig. proceeding). The doctrine does not, for instance, protect corporate officials who have "first-hand knowledge of certain facts." *See Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 168 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that apex doctrine did not apply because appellants did not seek to depose apex witness because of his corporate position).

*B.*     *Unique or superior personal knowledge*[3]

In its sole issue, Baylor argues that Andrews failed to satisfy the apex deposition standard as delineated in *Crown Central* and its progeny. Specifically, Baylor argues that the trial court abused its discretion in ordering Dr. Livingstone's deposition because Andrews failed to show that Dr. Livingstone has unique or superior personal knowledge of discoverable information.

In response to the mandamus petition, Andrews argues that she satisfied her burden to show that Dr. Livingstone has unique or superior knowledge of discoverable information because Dr. Livingstone authored at least two statements prior to Andrews's allegations, and, because Dr. Livingstone is the author of her statements, "Dr. Livingstone unquestionably has unique and superior knowledge about them." Andrews further argues that Dr. Livingstone is the "only person who can answer basic questions concerning the meaning and intent of her statements."

The record shows that Andrews wants to question Dr. Livingstone about various communications that she made prior to the events that form the basis of this litigation. One such communication occurred in a Texas Tribune article from May 30, 2017, in which Dr. Livingstone wrote,

---

[3]     We note at the outset that Andrews did not argue below or in her response to the mandamus petition that the apex-deposition doctrine did not apply or that Dr. Livingstone's affidavit was insufficient to deny any knowledge of relevant facts. Thus, we confine our analysis to addressing whether the trial court abused its discretion in determining that Andrews satisfied her burden to show that Dr. Livingstone has unique or superior knowledge of discoverable information.

15

Over the past few weeks, I have often been asked what I would tell parents who have students coming to Baylor this fall or who are considering Baylor for next year. As the mother of a daughter who is a rising college senior, I would tell parents that Baylor is an exceptional academic institution where students meet lifelong friends and have transformational experiences. I would also acknowledge that mistakes have been made that were not addressed appropriately, particularly with regard to sexual violence on campus. The lessons learned from those mistakes, and the many changes made to ensure a safer and healthier campus for all of our students, have resulted in Baylor being a better place now than we were two, three and certainly five years ago.

I am confident that students coming to Baylor today will experience a safer and healthier environment.

Andrews also wants to question Dr. Livingstone about a June 1, 2017 e-mail she received, in which Dr. Livingstone wrote:

As I express my excitement in returning to Baylor and eagerly anticipate our days ahead, I also wish to commend Dr. David Garland and the entire Baylor community for their tremendous work over the past year to create a better Baylor as we emerge from the challenges and heartbreak surrounding incidents of sexual violence in our community. All have joined hands to renew our commitment to providing a safe and welcoming home on campus for our students and to redouble our efforts to advance Baylor's distinctive Christian mission in higher education.

In her response to Baylor's motion for protection, Andrews argued that although Dr. Livingstone may not know the details of Andrews's sexual assault, Dr. Livingstone "clearly has unique and superior personal knowledge regarding *her own statements and representations* to students and their parents about sexual

16

violence at Baylor, including, for example, the reasons she made her statements, the circumstances in which they were made, what she meant by the words she used, whether her statements are authentic, what information she relied upon in making them, the sources of her information, etc." Andrews explained that she wants to depose Dr. Livingstone because she is the only person who can testify as to her intent in making the statements and that the information gleaned from Dr. Livingstone will be relevant in arguing its claims at trial, including that "Baylor knew its campus was unsafe due to a sexual assault problem on campus and that Baylor failed to adequately warn Annie about that problem."

Here, the record reflects that Dr. Livingstone has general knowledge of most, if not all, of the various aspects of Baylor University, but Dr. Livingstone's affidavit disclaims unique and superior personal knowledge regarding the underlying lawsuit's allegations and further states that she performs her duties based on reports and information provided to her by others.

Andrews has not pointed to any evidence in the mandamus record to show that Dr. Livingstone has unique or superior personal knowledge on whether Baylor knew its campus was unsafe or that Baylor failed to adequately warn Andrews about that problem.[4] In her response to this mandamus petition, Andrews

---

[4] Andrews argues that Dr. Livingstone is the only one who can answer questions about her statements. To prove her assertion, Andrews points out that upon deposing a Baylor police officer in charge of investigating sexual assaults, the

17

acknowledges that "other Baylor employees might have knowledge regarding specific instances of sexual violence on Baylor's campus, and other employees might know of 'mistakes' made by Baylor or 'lessons' that Baylor allegedly learned." Such an acknowledgement undermines the trial court's finding that Dr. Livingstone has unique or superior personal knowledge. The record also shows that Dr. Livingstone began serving as president in June 2017, within weeks of making the subject communications in late May and early June 2017. The fact that Dr. Livingstone had been Baylor's president for such a short time, while not dispositive, also undermines the trial court's finding that Dr. Livingstone had unique or superior personal information of discoverable information. Although Dr. Livingstone likely has some information about the issues identified by Andrews, that is not enough to meet the *Crown Central* test. *See In re Alcatel*, 11 S.W.3d at

officer could not answer questions related to Dr. Livingstone's subjective intent in making her statements. We disagree that merely showing that a witness cannot answer questions about an apex official's subjective intent satisfies the deposition-seeking party's burden to demonstrate that the apex official has unique and superior knowledge. If we agreed with Andrews's argument, the apex guidelines would be eviscerated for any apex official who has ever made a public statement. *See In re Alcatel*, 11 S.W.3d 173, 177 (Tex. 2000) ("Allowing apex depositions merely because a high-level corporate official possesses apex-level knowledge would eviscerate the very guidelines established in *Crown Central*."); *see also In re Continental Airlines, Inc.*, 305 S.W.3d 849, 859 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (stating that "[CEO's] subjective intent in making the subject public statements does not establish anything regarding negligence, proximate cause, or damages."); *In re Daisy Mfg. Co.*, 976 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1998, orig. proceeding) (stating, "Merely because a corporate official espouses a generalized opinion concerning the safety of one of his company's products does not imbue that official with unique or superior knowledge of the product.").

179 (stating that *Crown Central* is "not satisfied by merely showing that a high-level executive has some knowledge of discoverable information").

We therefore conclude that Andrews did not satisfy her burden to show that Dr. Livingstone has unique or superior personal knowledge. Andrews must therefore attempt to obtain discovery through less intrusive methods before it may depose Dr. Livingstone.[5] *In re Alcatel*, 11 S.W.3d at 176 ("The party seeking the apex deposition is required to pursue less intrusive means of discovering the information only when that party cannot make the requisite showing concerning unique or superior knowledge.").

Because we conclude that Andrews failed to show that Dr. Livingstone possessed unique or superior knowledge of discoverable information, the trial court's order cannot be supported under *Crown Central*. Accordingly, we conclude that the trial court abused its discretion in ordering Dr. Livingstone's deposition.

We sustain Baylor's sole issue.

## Conclusion

We conditionally grant Baylor's petition for writ of mandamus. We order the trial court to vacate its May 19, 2020 order that denied Baylor's motion for

[5] The mandamus record reflects that the parties have only engaged in limited discovery. Specifically, the record reflects that at the time this original proceeding was filed, only two depositions, Andrews and a Baylor police officer, had been completed.

protection and ordered the deposition of Dr. Livingstone. The writ will only issue if the trial court fails to do so. We lift the stay entered on June 23, 2020.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Adams.